FRANK J. MOONEY *vs.* FRANK E. CLARK ET AL.

Third Judicial District, Bridgeport, April Term, 1897. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

A resolution of the General Assembly (Special Acts of 1895, p. 416) requiring that all highway crossings at grade over the main tracks of a railroad company in the city of Bridgeport should be abolished in the manner thereinafter prescribed, provided, among other things, that the city and railroad company might agree upon the plans, methods and time of making the required changes, and what proportion of the cost thereof should be paid by the city; that for the purposes of making said agreement the mayor and two other citizens named were empowered to act for the city, and that such agreement should be final and conclusive upon all parties concerned, when approved by the board of railroad commissioners of this State, and should then be deemed to be an order of said board and enforceable by mandamus or otherwise, upon their application. *Held* that the legislature in passing the resolution in question were in the exercise of a governmental power and duty to secure safe highways, and that the specific provisions were not in violation of constitutional rights or principles.

[Argued April 23d—decided May 25th, 1897.]

SUIT to restrain the municipal authorities of the city of Bridgeport from approving or confirming a certain contract entered into by its agents with the New York, New Haven and Hartford Railroad Company, concerning the elimination of grade crossings, brought to the Superior Court in Fairfield County and tried to the court, *Prentice, J.,* upon demurrer to the complaint; the court sustained the demurrer and rendered judgment for the defendants, and the plaintiff appealed for alleged errors in the rulings of the court. *No error.*

Prior to the argument on demurrer a motion had been made for the dissolution of the temporary injunction, which

had been granted by *Hall, J.,* and his ruling as to the constitutionality of the Special Act under which the contract was entered into, was accepted and followed by *Judge Prentice,* who declined to hear further argument thereon.

*Robert E. DeForest* and *Jacob B. Klein,* for the appellant (plaintiff).

In the case at bar the question of the constitutionality of the Special Act cannot be determined by a mere inspection of the Act itself; it must appear that the legislature accorded a hearing to the city of Bridgeport and thereafter·judicially determined the preliminary questions. It will not be seriously claimed that the General Assembly can constitutionally try, condemn and impose penalties upon a body of people aggregated as a municipal corporation, without notice, and a hearing and judicial determination. *Camp* v. *Rogers,* 44 Conn. 296; *Westbrook's Appeal,* 57 id. 95; *State* v. *Baldwin,* 45 id. 142; *Lothrop* v. *Steadman,* 42 id. 592. The Special Act is unconstitutional in that it confers upon a railroad company, and three persons arbitrarily selected by the legislature, absolute power to make a contract for the city of Bridgeport, to which the city of Bridgeport is not a party. This is not due process of law. It makes the railroad company one of the judges in a question of property rights between the company and the city. *Windham Cotton Mfg. Co.* v. *R. R. Co.,* 23 Conn. 373; *Dyer* v. *Smith,* 12 id. 391. Moreover, the Act violates the constitutional provision against municipal aid to railway companies; it authorizes the issue of city bonds to raise money for the payment of the expenses of the work. That certainly is a "loan" of the city's "credit" for that purpose. *People* v. *Salem,* 20 Mich. 452; *Bay City* v. *Treasurer,* 23 id. 500; *Lowell* v. *Boston,* 111 Mass. 454; *Austin* v. *Coggeshall,* 12 R. I. 329; *Loan Ass'n* v *Topeka,* 20 Wall. 655; *Allen* v. *Inhabitants of Jay,* 60 Me. 124.

*Daniel Davenport* and *George P. Carroll,* for the appellees (defendants).

The plaintiff's statement of his case puts him out of court.

If neither the so-called agents of the city, nor the city nor the common council can make the contract, the plaintiff as a taxpayer cannot be injured by the attempted ratification. *Dibble* v. *New Haven*, 56 Conn. 199 ; *Turney* v. *Bridgeport*, 55 id. 418 ; *Bloomfield* v. *Charter Oak Bank*, 121 U. S. 121 ; *Samis* v. *King*, 40 Conn. 310. It is a mistake to view the agreement in question as a contract between the city and the railroad company. It is merely a means adopted by the State to determine the plans and apportion the expense for the removal of grade crossings in the city. Having been entered into, when approved by the railroad commissioners, it becomes an order of the railroad commissioners, and is then the State's method of dealing with the matter, which the railroad commissioners must carry out. The plaintiff, however, says that the legislature has no power to pass the resolution in question, because it is in violation of the Constitution of the State and of the United States. There are no facts alleged in the plaintiff's complaint and exhibits that point out the unconstitutional features of the agreement, and we are left to judge of it upon its face. It appears that every one of its provisions is included within the terms of the resolution authorizing it, and consequently the plaintiff must attack the power of the legislature to pass the resolution. This he cannot do successfully because every conceivable phase of the subject has been passed upon by this court adversely to his claims, in the long series of decisions growing out of the removal of grade crossings, under Special Acts of the General Assembly, or under the general railroad law. The police and taxing powers of the State are ample to authorize the resolution in question. *Westbrook's Appeal*, 58 Conn. 95 ; *Woodruff* v. *N. Y. & N. E. R. R.*, 59 id. 63 ; *State. ex rel. Bulkeley* v. *Williams*, 68 id. 146, 151, 152 ; 1 Dill. on Mun. Corp. (4th ed.), § 229 ; *Woodruff* v. *Catlin*, 54 Conn. 277 ; *N. Y. & N. E. R. R. Co.'s Appeal*, 58 id. 532 ; *State's Attorney* v. *Selectmen of Branford*, 59 id. 402 ; *N. Y. & N. E. R. R. Co.'s Appeal*, 62 id. 527 ; *State ex rel. N. Y. & N. E. R. R. Co.* v. *Asylum St. Bridge Com.*, 63 id. 91 ; *Cullen* v. *R. R. Co.*, 66 id. 212.

ANDREWS, C. J.    The plaintiff, in his complaint, prayed for an injunction to restrain the city authorities of Bridgeport from taking certain action which he alleged they were about to take, and which would subject the taxpayers of that city to heavy, illegal taxes.    The Superior Court refused the injunction and dismissed the complaint.    From that judgment the plaintiff has appealed to this court.

If it were true that the consequences of the action complained of would follow, as asserted by the plaintiff, then his complaint was not prematurely brought.    *Obsta principiis,* is an exceedingly good maxim to act upon in cases where illegal taxation is threatened.    But we think the consequences feared by the plaintiff will not follow, and that there is no error in the judgment of the Superior Court.    To make this view entirely plain we must examine the case with some care, both as to the action itself and its legal effect.

The defendants are the common council of Bridgeport. On the 20th day of April, 1896, Frank E. Clark, William E. Seeley and Frederick S. Stevens, who were appointed by a resolution of the General Assembly, enacted in 1895, agents on behalf of that city to enter into an agreement with The New York, New Haven and Hartford Railroad Company, reported to the Common Council of that city that they had, pursuant to that resolution, made an agreement with the said railroad company in respect to the matters mentioned in the resolution, and submitted the same, reading as follows:—

" Whereas, the General Assembly of the State of Connecticut, at its last session, passed a resolution which was approved June 22d, 1895, and which provides that in order that the safety of the public may be insured, all crossings at grade over the main tracks of the railroad of the New York, New Haven & Hartford Railroad Company in the city of Bridgeport, shall be abolished, and also that said city and said railroad company may within six months after the passage of said resolution, agree upon the manner, plans, method and time in which said crossings at grade shall be abolished, and upon all other matters mentioned in Sec. 6 of said resolution, and what amount or what proportion, or what items

of the cost thereof shall be paid by the city of Bridgeport, and for the purpose of making said agreement, empower the Mayor of said city of Bridgeport and William E. Seeley and Frederick S. Stevens, to act for said city : "Now, therefore, in accordance with the provisions of said resolution of the General Assembly and subject to the approval of the board of railroad commissioners, the said city of Bridgeport acting herein by its agents, Hon. Frank E. Clark, its mayor, and the said William E. Seeley and Frederick S. Stevens, thereunto duly authorized by said resolutions, and said New York, New Haven & Hartford Railroad Company, acting herein by John M. Hall, its vice-president, hereunto duly authorized, do hereby agree as follows : 1. For the purpose of abolishing the crossings aforesaid, the location, grade and plan of said railroad through said city and the number of its tracks, shall be substantially as shown upon the plans marked ' Plans for the abolition of grade crossings on the Main Line, New York, New Haven & Hartford Railroad Company, city of Bridgeport, Conn.'—said plan being signed by the respective agents of the parties hereto, and the work of excavation, construction, alteration, and grading of said tracks, streets, approaches, bridges and abutments, according to said plans, shall be done by said railroad company, both upon its own land and upon the highways affected by said plans, except as hereinafter specifically otherwise provided. The grades of the railroad tracks and of the highways shall be as shown upon said plans. The stone abutments of all bridges shall be of equal workmanship of the abutments of the existing bridge across Fairfield avenue (west), unless modified by the railroad commissioners. Said railroad company, during the progress of said work, shall have the free use of such streets or portions of streets and the right to temporarily close such streets as may be necessary for the convenient prosecution of the work. Crescent avenue and Railroad street are hereby extended from their present easterly termini to the westerly line of the proposed freight station yard of said railroad company east of Central avenue, and East Washington avenue shall be extended and constructed by said city to Seaview avenue, provided said

railroad company elects to lay a siding on the north side of its main tracks as hereinafter provided, and so much of South Railroad avenue between Broad and Main streets, as is occupied by the structure of said railroad company as shown on said plan, is hereby discontinued as a highway, and Clark, Wilmot and North and South Railroad avenues, west of Fairfield avenue (west), and all streets and private ways whether existing or projected upon or across the property of said railroad company along its main line tracks, not shown upon said plans, are hereby discontinued, except the private ways between a point opposite the east end of Union street and Fairfield avenue (east). South Railroad avenue is hereby extended from Wordin avenue to Howard avenue forty feet wide. Said railroad company shall lay and maintain a track at grade upon the south side of South Railroad avenue, from Fairfield avenue eastward to the westerly line of South avenue, free from all burdens or assessments of any kind so long as said railroad company maintains the same, said track to be connected by proper switches with such side or spur tracks as now exist or as may hereafter be granted or permitted by said city. Said railroad company shall bridge, as shown upon the plans, the following named streets: Bostwick avenue, Hancock avenue, Howard avenue, Wordin avenue, Iranistan avenue, Park avenue, South avenue, Myrtle avenue, Warren street, Lafayette street, Broad street, Main street, Wall street, Fairfield avenue, Sterling street, Noble avenue, Clarence street, Kossuth street, East Main street, Pembroke street, Hallett street, Seaview avenue, Central avenue, and Bishop avenue, with the head room in each case of not less than twelve feet in the clear between the crown of the street and the bottom of the girder, unless otherwise shown on the plans.

" The location of the pipes, wires, poles or tracks of any water, gas, telephone, or electric light, telegraph or power company, or street railway company, and all public or private sewers or drain pipes, shall be changed at the expense of said several companies, whenever in any manner they interfere with the prosecution of said work or the construction or maintenance of the same according to said plans, in

such manner or in such time as the board of railroad commissioners shall order.

" For the accommodation of manufacturing and other shippers in East Bridgeport, said railroad company shall construct a fifth track leading from its proposed freight station in East Bridgeport, or from some point between said freight station and Seaview avenue, to the easterly line of Hallett street, and the same may be placed either on the north or south side of the main tracks, but shall cross Seaview avenue on a level with said main tracks. Such fifth track shall be considered as a part of the work herein provided for and shall be included in the cost thereof, and said railroad company shall have the right to use such portion of any street or streets immediately adjoining the railroad location as may be necessary for the location and maintenance of such fifth track, and said company shall be free from all burden and assessments on account of said fifth track so long as it shall maintain the same.

" 2. It is understood and agreed that the work herein provided for shall commence on or before the first day of April, 1896, and proceed as rapidly as possible until finished.

" 3. In consideration whereof said city hereby agrees to pay to said railroad company one sixth of the entire cost of constructing a four track railroad from Fairfield avenue (west) to Bruce's brook, as by the alignment and grade shown on the plans above named, including the work done on the highways as per said plans, and including all bridges ready for ties, all damages to property resulting from a change of grade of streets, or the discontinuance of the same or parts thereof, and the cost and damages to all lands which have been or may be acquired by said railroad company for the purpose of said four track construction, together with a reasonable allowance for the services and expenses to the date hereof of Frank E. Clark, William E. Seeley and Frederick S. Stevens, the persons appointed by said resolution to act for said city, and for such services as is imposed upon them by the provisions of this agreement, provided that the total cost to be paid by said city shall not exceed in the aggregate the

sum of $400,000. Said railroad company shall keep a detailed account of the cost of said construction, excluding therefrom the cost of the passenger station and ground and approaches thereto, not required for said four track construction, and all switches and side tracks and all other items properly belonging to the superstructure of said railroad. In case any question shall arise between said city and said railroad company as to any item charged or claimed as a proper charge for the construction account, either by said railroad company or said city, and the said city and said railroad company cannot agree as to its allowance as a proper charge to said construction account, all such disputed items shall be left to the arbitrament of the board of railroad commissioners of the State of Connecticut, whose decision shall be final and conclusive in the matter.

" In case any question shall arise between said railroad company and said city as to the value of any land owned or acquired by the railroad company, or damages thereto, on account of the necessary use thereof, or damages thereto by the construction of said four track railroad, and said city and said railroad company shall be unable to agree as to the value or amount thereof, then the equitable value of the portion of such property used, occupied or damaged, shall be determined by the Hon. Frank E. Clark, William E. Seeley, Frederick S. Stevens, William D. Bishop, I. DeVer Warner and James Staples, or by a majority of them, under oath, and their decision shall be final and conclusive between the parties as to the amount properly chargeable to the cost of the work herein provided for. The amounts paid for all items of construction, land damages by reason of changes of grade, discontinuance of streets or parts thereof, and all damages of every kind paid on account thereof for the prosecution of said four track construction, shall be submitted to Frank E. Clark. William E. Seeley and Frederick S. Stevens, as a committee to audit the same in behalf of said city, and shall be verified if required by said committee. If said committee at any time shall neglect or refuse to audit or approve said accounts when requested to do so, the board of railroad commissioners

shall, upon the request of either party, audit such accounts, and when so audited and approved by either said committee or said railroad commissioners as above provided, the amount thereof shall be accepted by both parties as a part of the entire cost of construction.  It is further agreed that said accounts shall be audited as often as once in 30 days, if required by the railroad company, and when so audited the proportion to be paid by the city to said railroad company shall be a debt due said railroad company, and shall draw interest at the rate of 5 per cent per annum until paid."

In the common council it was moved that the report be accepted and approved, and that the contract be affirmed and ratified.  This motion was referred to the appropriate committee.  Before that committee had reported this suit was brought.  These are the facts.

The record before us does not disclose whether or not the said contract has been approved by the board of railroad commissioners.  If it has not been so approved the plaintiff has no occasion for an injunction.  The resolution* seems to con-

*RESOLUTION PROVIDING FOR THE ABOLITION OF GRADE CROSSINGS IN BRIDGEPORT.

" Section 1. That in order that the safety of the public may be insured, all crossings at grade over the main tracks of the railroad of the New York, New Haven and Hartford Railroad Company, in the city of Bridgeport, shall be abolished in the manner hereinafter prescribed.

" Sec. 2. Said city and said railroad company may within six months after the passage of this resolution, agree upon the manner, plans, methods, and time in which said crossings at grade shall be abolished, and upon all other matters mentioned in section six of this resolution, and what amount, or proportion, or what items of the cost thereof, including a reasonable allowance for the services and expenses of the mayor, and William E. Seeley, and Frederick S. Stevens, shall be paid by the city of Bridgeport.  For the purpose of making said agreement, the mayor of the city and William E. Seeley and Frederick S. Stevens, of said city, are hereby empowered to act for said city, and such agreement shall be final and conclusive upon all parties concerned when approved by the board of railroad commissioners of this state, and shall then be deemed to be an order of said board and enforceable in the manner provided in section seven of this resolution.

" Sec. 3. If it shall be agreed as aforesaid that any highway crossing or crossings of said railroad tracks shall be abolished by carrying the same over or under said tracks, and the grade of said highway or of any highway

template that the contract shall not be obligatory on any one unless it receives such approval.   If, however, it has been, or

connecting therewith at or near said crossing is to be thereby changed, and that said city shall pay the special damages resulting to property owners from such change of grade, either or both of the parties to such agreement shall certify that fact to the clerk of said city, and it shall thereupon be the duty of the board of appraisal of benefits and damages of said city to estimate and appraise to the owners of land abutting on the raised or lowered portion of said highway the special damages resulting to them therefrom, over and above any special benefit resulting to them from the abolition of such grade crossing and such change of grade, and to estimate and appraise to the owners of any land situated in said city any special benefits accruing to them from the abolition of said grade crossing and said change of grade; *provided,* that the whole amount of benefits so assessed for said particular abolition and change of grade shall not exceed the whole amount assessed to the owners of said abutting land for said change of grade; *and provided, further,* that no benefits or damages for said change of grade shall be assessed to or against said railroad company.   And all the provisions of the charter of said city relative to the mode of assessing benefits and damages for the lay out of streets by the common council and to appeals therefrom, and relative also to the payment of the same and to filing liens therefor and the effect of the same, are incorporated and made a part of this section, and made applicable to assessments made under this section.

"SEC. 4. If, however, the agreement hereinbefore provided for shall not have been made, then and in that event the board of railroad commissioners are hereby authorized and directed to determine the plans, fix the time, and order the methods by which said crossings shall be abolished.

"SEC. 5. Said commissioners, upon written application to them therefor, by said city or said railroad company, are hereby empowered and directed to determine the manner, plans, method, and time in which said work shall be done and such crossings at grade be abolished.   Before making such determination, said commissioners shall hold a public session in the city of Bridgeport for the purpose of hearing said city and said railroad company, and any other persons interested, relative to the manner, plans, method, and time in which such work shall be done and said crossings at grade be abolished, and shall give such notice as they shall adjudge reasonable of the time, place, and purpose of said session, to said city and said railroad company and other persons, by publication in two daily newspapers published in said city.

"SEC. 6. Said commissioners shall determine upon the manner, plans, method, and time in which such work shall be done and said crossings at grade be abolished, and are empowered and directed to determine and order from time to time what changes shall be made in the manner in which the tracks of said railroad shall be carried through said city, what highways or private ways shall be carried over or under the tracks of said railroad, what highways or private ways, and what parts thereof, shall be discontinued or closed, and what, if any, new highways shall be laid out;

shall be hereafter, approved by that board, then it becomes an order of that board and enforceable as such. It is in the

and to determine within what time and in what manner said changes shall be made. Said commissioners are authorized and directed to require said railroad company to make such changes in the grade, alignment, radii of curves, and location of the tracks of said company, and to make such changes in the grade, lines, and width of any street or highway within said city, whether now crossing said tracks at grade or otherwise, as said commissioners shall judge necessary and proper for the purposes of this resolution; and they shall have power to authorize and require said railroad company to construct a new drawbridge across the navigable waters of Bridgeport harbor in the line of the existing drawbridge or near the same, and between it and the lower bridge, so called, and to determine the place where the draw in said bridge shall be constructed, and the plan of the same, and said bridge shall be free of the obligations imposed by section 3503 of the general statutes. And said commissioners are also authorized and directed to make all orders in relation to said changes and to any and all matters and things appertaining thereto, including the temporary use, occupation, or closing of any street in said city, and including the number of tracks to be constructed by said railroad company, which they may deem necessary and proper for the due execution of the purposes of this resolution. And the said commissioners are also authorized and directed to order any water, gas, telegraph, telephone, electric light, or power company, or street railway company, to change the location in the manner designated by the commissioners at its own expense, of its pipes, wires, poles, or tracks; also to make suitable orders as to the relocation of any public or private sewer or drain pipe.

"SEC. 7. After the manner, plans, methods, and time in which said work shall be done shall have been determined upon, it shall be the duty of said commissioners to cause the same to be executed, and for that purpose they may apply to the Superior Court of Fairfield county for writs of mandamus or for proper process either in law or equity, and said court shall have full power to grant the necessary and proper relief. And it shall be the duty of said railroad company, under the directions of said commissioners, to do all the work of excavating, construction, alteration, and grading of said tracks, streets, approaches, bridges, and abutments required in doing said work.

"SEC. 8. Said railroad company and said city may jointly and severally take any land or any interest therein which they shall deem necessary properly to carry out said work in any and all particulars, as called for in said plans so determined upon, in the same manner as is now provided by statute for taking land for railroad purposes. But, whenever any land is so taken for highway purposes, the appraisers so appointed shall, in estimating the damages to the owner or owners thereof, take into account any special benefits resulting to them from the layout of any new highway or highways, alteration in the width, line, or location of any existing highway or highways, or the discontinuance of any existing highway or high-

latter aspect that the legality of the contract is to be considered. We assume that the contract has been or will be approved by that board.

ways, or parts thereof, in doing said work, and only the excess of the damages, if any, over said benefit shall be awarded to such owner or owners for such taking of land.

" SEC. 9. In order to facilitate the completion of said work, whenever any damages shall be awarded to any person for taking his land for highway purposes, and it shall be necessary to pay for the same before said land is entered upon and taken, it shall be the duty of said railroad company to pay the sums so awarded, and if the amount thereof is to be reimbursed to said company by said city under the provisions of this resolution, the same may be collected, with interest, from said city by said railroad company in the same manner and to the same extent that debts lawfully contracted by municipal corporations in this state are enforced.

" SEC. 10. The common council of the city of Bridgeport is hereby authorized, under the corporate name and seal and upon the credit of said city, to issue bonds or other certificates of debt, and the same or the avails thereof, when sold as hereinafter authorized, may be appropriated by said common council for the purpose of paying the expense imposed upon said city by this resolution, but for no other purpose whatsoever; and said bonds may be issued in such sums and on such time and at such rate of interest, not exceeding five per centum per annum, payable semi-annually, and shall be prepared, signed, and authenticated in such manner and form, with coupons or otherwise, as said common council may determine, and the same may be sold from time to time under the direction of the mayor and the board of aldermen of said city; and said bonds or certificates when issued as aforesaid shall be obligatory upon the said city of Bridgeport to all intents and purposes, and may be enforced and collected in the same manner and to the same extent that debts lawfully contracted by municipal corporations in this state are enforced.

" SEC. 11. Said city shall provide a sinking fund for the payment of the principal of the bonds or certificates hereinbefore authorized, and in each municipal year during which any of said bonds shall be outstanding, the board of apportionment and taxation of said city shall appropriate a reasonable and suitable sum for the purpose of said sinking fund, which, with the accumulations thereon, shall be sufficient to pay said bonds or certificates at their maturity, and said sinking fund shall be in the care and under the direction of the board of sinking fund commissioners of said city; and said fund shall be securely invested by said board for the sole purpose of redeeming all of said bonds or certificates issued by this authority at their maturity.

" SEC. 12. Whenever said work shall have been done and said crossings at grade shall have been abolished, said commissioners shall direct what proportion of the entire expense, including land damages, together with their expenses and clerk hire, shall be paid by the said railroad company, by the city of Bridgeport, and by the state of Connecticut, in such propor-

The policy of this State for quite a number of years has been to remove all grade crossings of railroads by highways. To accomplish this end the legislature has been constantly making efforts, sometimes by mild and permissive means, and at others with a pretty strong hand. The most notable instance, perhaps, as it applied to a case of the very highest danger, was the Asylum Street Bridge Commission, in which the legislature by direct interference sought to remove the danger of a grade crossing in the city of Hartford, by its own agents. That was in 1884. Of that Act this court, in *Woodruff* v. *Catlin*, 54 Conn. 277, 295, said: "The Act, in scope and purpose, concerns protection of life. Neither in intent nor fact does it increase or diminish the assets either of the city or of the railroad corporations. It is the exercise of the governmental power and duty to secure a safe high-

tions as the commission may deem equitable, and when such payments shall be made.

"SEC. 13. The decision of said board of commissioners upon all questions of the plans or methods of abolishing said grade crossings shall be final and conclusive upon all parties concerned, but any party aggrieved by any order of the commissioners concerning the apportionment of expense may appeal to the Superior Court for the county of Fairfield, within thirty days after such order has been passed, giving notice to the adverse parties in accordance with the provisions of section 3518 of the General Statutes, and the comptroller is directed to act in behalf of the state in reference to such apportionment.

"SEC. 14. After said work shall have been done and said crossings at grade shall have been abolished as provided for in this resolution, the common council of said city may direct that an amount, not exceeding one-half of the whole expense of the city therefor, be assessed upon the persons or corporations other than said railroad company whose property is specially benefited or improved thereby in proportion to such benefits; and the board of appraisal of benefits and damages of said city shall proceed to assess the same, and the provisions of the charter of said city relative to the mode of assessing benefits for the construction of sewers within said city and to appeals therefrom, and to the payment thereof, and to filing liens therefor, are incorporated into and made a part of this section and made applicable to the assessments provided for in this section.

"SEC. 15. Said city is hereby authorized to purchase and said New York, New Haven and Hartford Railroad Company is hereby authorized to sell to said city the present railroad bridge across the Bridgeport harbor, with the approaches to said bridge on either side thereof, if said city and said railroad company shall agree upon the price and terms of sale."

way. The legislature, having determined that the intersec-
tion of two railways with a highway in the city of Hartford
at grade is a nuisance dangerous to life, in the absence of
action on the part either of the city or of the railroads, may
compel them severally to become the owners of the right to
lay out new highways and new railways over such land and
in such manner as will separate the grade of the railways
from that of the highways at intersection; may compel them
to use the right for the accomplishment of the desired end;
may determine that the expense shall be paid by either cor-
poration alone or in part by both ; and may enforce obedi-
ence to its judgment. That the legislature of this State has
the power to do all this, for the specified purpose, and to do
it through the instrumentality of a commission, it is now
only necessary to state, not to argue." The doctrine of that
case was repeated and acted upon in the *N. Y. & N. E. R. R.
Co.'s Appeal*, 58 Conn. 532, 541, and in *Woodruff* v. *N. Y. &
N. E. R. R.*, 59 id. 63, 79. In 1889 the legislature made
the board of railroad commissioners a general commission,
and commanded them to act on their own motion to accom-
plish the removal of those grade crossings which were specially
dangerous. Acting on that command the railroad commis-
sioners ordered the removal of a grade crossing by the New
York and New England Railroad Company in the town of
Bristol. That order and the Act under which it was made
were approved by this court in the *N. Y. & N. E. R. R. Co.'s
Appeal from Com'rs*, 62 Conn. 527, 530, where it was held
that it was competent for the legislature to act in the duty
of providing safe highways, through a general commission
as well as through a special one; and that decision has been
sustained by the Supreme Court of the United States. *N. Y.
& N. E. R. R.* v. *Bristol*, 151 U. S. 556.

Danger from grade crossings was as highly threatening,
and in some respects even more serious, in Bridgeport, than
at Asylum street in the city of Hartford. The New York,
New Haven & Hartford Railroad extends through the entire
length of the city a distance of more than four miles, and on
both sides of the harbor which it crosses by a draw-bridge.

A part of the way it lies along the shore of the harbor, obstructing all passage from the business parts of the city to the steamboat landing and the docks. It appears in the agreement that there are twenty-four streets crossed at grade by the railroad, some of them, as it is stated, the most frequently traveled ones in the whole city. It is a town of 60,000 inhabitants and is rapidly growing. Its people are largely engaged in manufacturing, and their prosperity is affected in a great degree by the readiness with which they can receive and transmit goods from and by railroad. Its growth in wealth and population depends materially upon its railroad facilities. The railroad receives large amounts of freight and very many passengers from the city, and desires to extend these facilities. The railroad company has completed its four tracks from New York to New Haven, except that part which lies in the city of Bridgeport. The completion of that work awaited the adoption of some plan by which these grade crossings could be avoided. The State would not permit the danger of these crossings to be increased by the additional tracks at grade. The city for its own welfare was not willing that such increase of danger should be allowed, and the railroad shared in the same unwillingness.

It was this condition of things in Bridgeport which the legislature in 1895 was called on to meet, when it enacted the Special Act under which Mr. Clark and the others acted in making the contract above recited. That contract declares that in order that the safety of the public may be insured, all crossings at grade over the main tracks of the railroad of the N. Y., N. H. & H. R. R. in the city of Bridgeport shall be abolished in the manner therein provided. It appoints Mr. Clark and the others to act for the city, and authorizes them to make an agreement with the railroad company as to the manner, plans, method and time in which all the said crossings at grade shall be abolished, and then declares that " such agreement shall be final and conclusive upon all parties concerned when approved by the board of railroad commissioners of this State, and shall then be

deemed to be an order of said board and enforceable in the manner provided in section seven of this resolution."

Assuming now, as we do, that the agreement has received or will receive the approval of the railroad commissioners, this case comes fully within the principles laid down in the authorities we have cited.  The resolution, the agreement, and the approval by the railroad commissioners, are but the parts of one governmental act to secure safe highways in the city of Bridgeport.  The legislature having determined that the grade crossings of the various streets in that city constitute a nuisance dangerous to life, has proceeded, in the way pointed out in the resolution and agreement, to compel the city and the railroad to become the owners of new highways and new railroads to accomplish that end, has determined who shall do the work and who shall pay the expenses, and is doing this through the instrumentality of the persons named in the resolution and of the railroad commissioners. That the legislature of this State has the power to do this, it is now necessary only to state, not to argue.  This governmental act does not increase or diminish the assets of the city or of the railroad.  It only changes the form in which the assets exist.  It " violates no contract, takes away no property, and interferes with no vested right."  *N. Y. & N. E. R. R. Co.'s Appeal*, 62 Conn. 527, 538; *State ex rel. N. Y. & N. E. R. R.* v. *Asylum Street Bridge Commis.*, 63 id. 91, 98; *State's Attorney* v. *Branford*, 59 id. 402; *Middletown* v. *N. Y., N. H. & H. R. R.*, 62 id. 492.

The Special Act is constitutional, and there is no error in the judgment complained of.

In this opinion the other judges concurred.

TORRANCE, J., (concurring).   The Act of June 22d, 1895, provides for an abatement of a nuisance dangerous to life, resulting from the intersection of railroad tracks and highways at grade within the limits of the city of Bridgeport, at the expense of the municipality and railroad company responsible for its existence ; and it authorizes the board of railroad commissioners to make the necessary order for this purpose,

and provides for an agreement between the company and
certain persons named in the Act as representatives of the
city, for the purpose of facilitating the performance by the
railroad commissioners of the duty imposed upon them.    In
this the legislature does not exceed its powers.

It was claimed on behalf of the plaintiff that the Act au-
thorizes an agreement, not merely for the purpose of aiding
the commissioners in making a proper order, but for the pur-
pose of binding the city by obligations other than those in-
volved in the elimination of grade crossings, and that a valid
agreement for such purpose requires the action of the muni-
cipality; also that the Act authorizes a donation by the city to
the railroad corporation for the building of additional tracks
and a new draw-bridge, contrary to the provisions of the
XXVth article of the amendments to the Constitution.    I
agree that it is not necessary to pass upon these questions in
order to sustain the demurrer to the plaintiff's complaint,—
the only question now before us; but I deem it proper, in
concurring in the opinion, to negative any implication that
these questions are affected by the decision.

In this opinion HAMERSLEY, J., concurred.