JOHN M. WHEELER ET AL. *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Third Judicial District, Bridgeport, Oct. Term, 1898. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Where the jurisdiction of the Superior Court over an appeal from an order and decree of the board of railroad commissioners depends upon whether the original petition to the commissioners was brought to and determined by them under a special Act of the legislature

Wheeler et al. *v.* New York, N. H. & H. & R. Co.

which allowed no appeal, or under a general statute which permitted one, and the allegations of the appeal itself leave this uncertain, the appellee, in a plea to the jurisdiction of the court, may properly set out the original proceedings at length, and allege that they were begun and determined under authority of the Special Act.

The allegations of such a plea reviewed, and *held* to show that the proceeding was begun and determined under authority of the Special Act, or under a general statute which permitted no appeal, and that the Superior Court, therefore, had no jurisdiction of the cause.

Whenever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to previous rulings.

Argued November 1st—decided November 29th, 1898.

APPEAL from an order of the railroad commissioners in relation to the abolition of certain grade crossings in Bridgeport which involved a taking of the plaintiffs' land, brought to the Superior Court in Fairfield County and tried to the court, *Robinson, J.*, upon the plaintiffs' demurrer to the defendant's amended plea to the jurisdiction; the court *pro forma* overruled the demurrer, sustained the plea and dismissed the cause, and the plaintiffs appealed for alleged errors in the rulings of the court. *No error.*

The material parts of the appeal to the Superior Court are as follows : " 1. The petitioners own a valuable piece of property situated in said Bridgeport, bounded southwest by Bridgeport harbor, northwest by the tracks of the New York, New Haven & Hartford Railroad Company, north by Sterling street, east by Noble avenue, and south by land of Frank Miller and others. 2. Said property is used by your petitioners as partnership property for the purpose of carrying on a wholesale and retail coal business. 3. Said property is peculiarly adapted for said business and for the carrying on of said business thereupon in the way of the delivery of coal thereto by means of large schooners and other large vessels coming thereto and discharging coal thereat; and it is so both by reason of its unusual length of dock front and its proximity to deep water, and also by reason of the unusual hardness and firmness of the ground, being such as exists nowhere else along Bridgeport harbor, except where large and expensive buildings are now located. 4. If your petitioners should be deprived.

of said property there would be no other property in Bridgeport that could be obtained suitable for a coal yard. 5. The New York, New Haven & Hartford Railroad Company maintains and operates a railroad through said Bridgeport, a part of which is immediately northwest of your petitioners' property. 6. On December 21st, 1895, said company and the directors thereof, whose road then did and ever since has crossed and was and is crossed by numerous highways at grade in said Bridgeport, brought their petition in writing to the railroad commissioners of this State, therein alleging that public safety required an alteration in said crossings, their respective approaches, the method of crossing the same, the location of the same, the closing of said highway crossings and the substitution of certain other crossings therefor not at grade, and as a part of the method proposed by them for accomplishing said results they presented plans, one detail of which involved the taking of a strip of land seventy feet wide through the middle of your petitioners' said property and the construction of an elevated railroad structure thereon; and they prayed that such work might be ordered according to the plans so presented. 7. One of said highway crossings at grade is at Sterling street aforesaid, and your petitioners own land adjoining such crossing and adjoining that part of said highway to be changed at grade. 8. Such plans if carried out would irreparably injure and would utterly destroy your petitioners' said property and their said business. 9. It is perfectly feasible for said company to abolish said grade crossings without taking any property of your petitioners, and so as not to destroy your petitioners' property and business. 10. On May 17th, 1897, said company and the directors thereof brought their supplemental petition in writing to the railroad commissioners, alleging, by reference, the same facts as in their original petition, and also then alleging for the first time that your petitioners had an interest in land needed for certain of said crossings. 11. Thereupon the railroad commissioners ordered that said original and supplemental petition should be heard by them on June 8th, 1897, and that notice thereof be given to your petitioners among others. 12. On

said June 8th, said company and its directors and your petitioners appeared and thence said matter was continued to June 10th, 1897, when the parties again appeared and were fully heard. 13. On June 30th, 1897, said railroad commissioners determined and decided that said changes, alterations and removals should be made by said company, including that part thereof that involved the taking of your petitioners' property and the destruction thereof of their said business. 14. On June 30th, 1897, said determination and decision was communicated to said company and to your petitioners. Your petitioners therefore appeal from said determination and decision of said railroad commissioners to this honorable court, and they pray that this honorable court will hear this appeal and will re-examine the question of the propriety and expediency of the order, determination and decision appealed from, and proceed thereon in the same manner as upon complaints for equitable relief, and make such order in the premises as to right and equity may pertain, according to the statute in such case made and provided."

The appeal was brought to the first Tuesday of September, 1897. On February 14th, 1898, the appellee below filed a plea to the jurisdiction, which was subsequently amended, and filed March 1st, 1898. This plea sets out in full the petitions referred to in paragraphs 6 and 10 of the original appeal, and the doings and proceedings of the railroad commissioners thereon. The first of said petitions as thus set out is as follows :—

" To the Honorable Board of Railroad Commissioners of the State of Connecticut :—

"Gentlemen :—We herewith submit to your honorable board for approval, an agreement duly executed by the city of Bridgeport and the New York, New Haven & Hartford Railroad Company, together with the plans referred to in said agreement, under the provisions of § 2 of the resolution of the last General Assembly, providing for the abolition of the grade crossings in the city of Bridgeport.

" We respectfully request your approval of the same, and

such action in the matter as is provided by said resolution of the General Assembly.

"Yours respectfully, CITY OF BRIDGEPORT, by Frank E. Clark, Mayor; Wm. E. Seeley; Frederick S. Stevens.

"The New York, New Haven & Hartford Railroad Company, by John M. Hall, Vice-President."

The agreement referred to in said petition, purporting to be duly executed as alleged in said petition, is then set out in full. The terms of this agreement are set out in full in the case of *Mooney* v. *Clark*, 69 Conn. 241, and it is deemed unnecessary to recite them here.

The material parts of the petition referred to in the tenth paragraph of the appeal, as set out in the plea, are as follows :—

"The petition of the New York, New Haven & Hartford Railroad Company respectfully represents : That it is a corporation organized under and by virtue of the laws of this State and operating a railroad through the city of Bridgeport in said State; that its line of road has long since been located, approved and established in said city; that the proper operation of said railroad and the terms of the contract subsisting between said company and said city of Bridgeport, require the alteration of the location of said railroad in said city so as to change the radius of its curves, straighten and improve its lines, width and extent of depot grounds, slopes and embankments, and extend the lines of sight; and for said purposes, and for additional tracks, turnouts, and freight and passenger stations and depots, the taking by the petitioner is required of all those certain pieces or parcels of land as shown on plans referred to in said agreement between the petitioner and said city, dated December 21st, 1895, said plans being on file at the office of the city clerk of said city, and at the offices of the petitioner in the city of New Haven; that the names and places of residence of all persons having an interest in said land are as follows : [Here follows the names and residences of the land owners.]

"Wherefore the petitioner prays for the approval of the taking of said land for the purposes aforesaid."

The plea then sets out in full the action of the railroad commissioners upon said first petition, showing the appointment by them of a day for a hearing thereon, at Bridgeport, at a designated place and hour on the 15th day of January, 1896, notice thereof to all parties interested, the hearing at the time and place designated, the appearance of the petitioners to prosecute their petition and of certain tax-payers of Bridgeport to oppose the granting of it, the protest filed by the latter, and the action of the railroad commissioners upon said protest; and finally the action of said commissioners upon the petition, which is recited in said plea as follows : —

"And no one else appearing to oppose the petition, we, on consideration, did find that all the crossings at grade over the main tracks of said railroad company in the city of Bridgeport are dangerous to the public travel; that public safety requires alterations in said crossings ; that, in order that the safety of the public may be insured, all said crossings at grade should be abolished ; that the manner, plans, methods, and time in which the said crossings at grade shall be abolished, and all other matters mentioned in § 6 of the resolution of the General Assembly of this State, ' Providing for the abolition of grade crossings in Bridgeport,' approved June 22d, 1895, as stipulated in said agreement, will accomplish the object of said resolution and fulfill all the requirements of public convenience and necessity ; that the apportionment of the cost between the city and the railroad company, and the methods for ascertaining the amount of the cost thereof to be paid by said city, as stipulated in said agreement, are in all respects reasonable and equitable as between the parties, and that said agreement is in accordance with, and within the provisions of, the said resolution of the General Assembly.

" Wherefore, the undersigned Board of Railroad Commissioners, acting under the authority of said resolution, hereby approve said agreement, and each and every of its provisions.

"And we do hereby determine and order that said agreement be executed according to its terms, and that the changes in the manner in which the tracks of said railroad shall be

carried through said city shall be made as shown upon said plans and stipulated in said agreement; that the highways and private ways shall be carried across said railroad, that the highways and private ways and parts thereof shall be discontinued and closed, and that new highways shall be laid out, all as shown on said plans and stipulated in said agreement; and we do hereby determine that the time within which and the manner in which said changes shall be made, shall be in accordance with the stipulations in said agreement, and we do hereby require said railroad company to make such changes in the grade, alignment, radii of curves, and location of the tracks of said company, and to make such changes in the grades, lines and width of streets and highways as shown on said plans and stipulated in said agreement; and we do authorize and require said railroad company to construct a new drawbridge across the navigable waters of Bridgeport harbor, and determine the place where the draw in said bridge shall be constructed, as shown on said plans and as stipulated in said agreement; and we deem necessary and proper for the due execution of the purposes of said resolution, and do order that streets in said city be temporarily used, occupied and closed as stipulated in said agreement, and that the number of tracks to be constructed by said railroad company shall be as shown on said plans and stipulated in said agreement; and we do direct that said railroad company shall do all the work of excavation, construction, alteration and grading of said tracks, streets, approaches, bridges and abutments required in doing said work, according to said plans and as stipulated in said agreement.

"And as to any matters requiring our further order in the premises, we will hear and determine the same from time to time upon the application of either party to said agreement."

The plea next sets out the doings and proceedings of the railroad commissioners upon the second petition, showing the appointment by them of a time and place for a hearing upon said petition in June, 1897, at a designated day, hour and place in Bridgeport, notice thereof to all parties interested in said hearing, the appearance of certain of such parties at

the hearing, the proceedings at the hearing and the final action of the commissioners upon said petition; which last as set out in said plea is as follows: —

" And now after such hearing and on consideration, we do find that for the construction and operation of the railroad of said company in said Bridgeport, in accordance with the terms of said contract and upon the location delineated and shown upon said plans and approved by us on the 23d day of January, 1896, it is necessary to take the several parcels of land in said application referred to and shown upon said plans and upon a plan on file in this office, marked 'Plan showing property to be acquired for abolition of grade crossings through the city of Bridgeport, Conn. N. Y. Div. N. Y., N. H. & H. R. R., June 5th, 1897.'

" We do, therefore, certify that it is necessary to take said several pieces of land for the purposes aforesaid, and do hereby signify our approval of the taking of the same." After said recitals the plea concludes as follows: "4. The foregoing petition, dated December 21st, 1895, was brought to said railroad commissioners by this appellee and by the city of Bridgeport, solely under authority of § 5 of a Special Act of the General Assembly, passed at its session of 1895, and entitled an Act 'Providing for the Abolition of Grade Crossings in Bridgeport.' 5. The foregoing petition, dated May 17th, 1897, was brought to said railroad commissioners by this appellee solely under authority of said Special Act, and under authority of section 3461 of the Public Acts, Revision of 1888. 6. The determination and decision of said railroad commissioners from which this appeal is taken, is the determination and decision of said commissioners upon the foregoing petitions. 7. Under the provisions of section 13 of said Special Act, the decision and determination of said commissioners upon said petition dated December 21st, 1895, is final and conclusive upon all parties concerned, and no appeal is allowable. 8. Under the provisions of said Special Act and by the general law, the decision and determination of said commissioners upon said petition dated May 17th, 1897, are final and conclusive upon all parties concerned, and

no appeal is allowable.    9. This court has no jurisdiction of
this appeal.    And therefore the appellee prays judgment."

The appellants below objected to the filing of this plea,
before and after it was amended, on the ground, mainly, that
as a plea in abatement it came too late in time, and could
not be pleaded after the entry of a general appearance.   The
court overruled the objection.   After the plea was allowed
and filed they made a motion to strike it from the files on the
grounds above mentioned, and this motion was denied.   They
then demurred to the plea and the demurrer was overruled.
They then replied to it, therein setting up, among others,
certain facts, which the court upon motion of the appellee
below ordered to be stricken out, to which order the appel-
lants below duly excepted.

The view taken of the case in the opinion renders it un-
necessary to set out at length the demurrer, or the reply, or
the rulings of the court adverse to the present appellants
upon other motions made in the court below.   The trial court
sustained the plea and dismissed the appeal.

*Robert E. DeForest* and *George P. Carroll*, with whom was
*Jacob B. Klein*, for the appellants (plaintiffs).

*Goodwin Stoddard* and *William D. Bishop, Jr.*, for the ap-
pellee (defendant).

TORRANCE, J.   The important question in this case is
whether the Superior Court had jurisdiction of the appeal.
If it had none, if no appeal at all lay to it from the doings of
the commissioners here in question, then its judgment dis-
missing the appeal was right and must stand; for upon this
supposition the court had no power to deal with the subject-
matter brought before it by the attempted appeal, and could
only dismiss it.

The appeal alleges or seems to allege, that both of the pe-
titions referred to in it were acted upon by the commission-
ers at one and the same time in June, 1897, and that it is
taken from their action upon both at that time.   The plea

shows that they were acted upon separately; that final action upon the first petition was had in January, 1896, and upon the second in June, 1897. Whether we regard the appeal as taken from the action of the commissioners upon each, or either, or both of the petitions, we are of opinion that the Superior Court had no jurisdiction of the appeal. From the facts set forth in the plea it is clear that the first petition was brought under the provisions of the Special Act of 1895. Special Laws of 1895, pp. 416–419.

It is brought expressly to obtain the approval of the commissioners of an agreement alleged therein to have been made between the city of Bridgeport and the railroad company under the provisions of section 2 of that Act, and their approval of the plans referred to in said agreement for the removal of grade crossings under said Act. The Act in question gave to the commissioners power to approve of such agreement and plans, and they did, after due notice and hearing, approve of them in January, 1896. After such approval, this agreement, by the express terms of said Act, became an order of the commissioners, enforceable as such, under the seventh section of the Act, by *mandamus. Mooney* v. *Clark*, 69 Conn. 241.

The agreement and the plans and methods for removing the grade crossings therein referred to, thus became, by approval, a decision of the commissioners upon questions relating to the plans and methods for abolishing the grade crossings under said Special Act; and this decision, whether regarded as made under the second or under the thirteenth section of said Act, is in express terms in both sections made final and conclusive upon all concerned. The language of these two sections clearly negatives the existence of any right of appeal from such a decision of the commissioners as was made upon the first petition, and we know of no other statute, public or private, giving any such right. It is thus too clear for further argument that no appeal lay to the Superior Court from the decision of the commissioners upon the first petition.

The commissioners having thus, in effect, decided upon the plans and methods for the removal of the grade crossings

as provided for by the Special Act, it became necessary for the railroad company to change its main tracks, sidings, bridges and stations, in accordance with said plans, and to obtain the land necessary for such purpose. As the initial step in obtaining such additional land for railroad purposes, the railroad company in May, 1897, brought the second petition to the railroad commissioners, in order to obtain their approval of the taking of the lands described, by reference, in the petition, for the purposes described in the petition. The eighth section of the Special Act aforesaid provides that the railroad company may take any land or interest therein, which it shall deem necessary to properly carry out the work called for in the plans determined upon by the commissioners, "in the same manner as is now provided by statute for taking land for railroad purposes."

The statute for taking land for railroad purposes (General Statutes, § 3461) provides, in effect, that a railroad company shall have the right to take additional land for railroad purposes, with the approval of the railroad commissioners. The second petition was brought solely to obtain such approval. It alleged, in effect, that the order of the commissioners passed in January, 1896, required the alteration of the location of the railroad in Bridgeport so as, in the language of § 3461 aforesaid, "to change the radius of its curves, straighten and improve its lines, width, and extent of depot grounds, slopes, and embankments, and extend its lines of sight"; that for said purposes, and for additional tracks, turnouts, and freight and passenger stations and depots, the taking of the lands described in the petition was necessary; and it asked the commissioners to approve of the taking of said lands for the purposes mentioned in the petition.

The railroad company claims that this petition was brought under the provisions of the Special Act aforesaid and under the provisions of § 3461 of the General Statutes; while the appellants here claim that it was brought under the provisions of Chap. 220 of the Public Acts of 1889. If it can be regarded as brought under the provisions of the latter Act, an appeal would lie from the decision of the commissioners,

under section six of the Act. From the facts disclosed by the plea, however, we are of opinion that the petition cannot be regarded as brought under the Act of 1889.

The legislature had itself specially and expressly taken action with reference to the elimination of certain dangerous grade crossings in Bridgeport. It had in effect made a special order, without regard to the general law on the subject, that these grade crossings should be abolished as speedily as possible in the manner by it prescribed in that order. It had fully empowered its agents, the railroad commissioners, to decide upon and adopt plans for this work, and had given them ample powers to carry its will into effect. Its agents had matured and adopted a plan for the removal of these grade crossings, and had made it known to the railroad company and the city of Bridgeport, upon whom by order of the legislature, lay the duty to carry the plan into effect. For the purpose of performing that duty and complying with the special and particular expression of the legislative will, with regard to grade crossings, embodied in the Special Act of 1895 and in the order of the commissioners, the railroad company brought this second petition. We think it is clear that it was not brought under the Act of 1889, but that it was brought, and can only be regarded as brought, either under the Special Act of 1895 or under § 3461 of the General Statutes, or under both; and whether brought under the one or the other, or both, no appeal lies from the decisions of the commissioners thereon. If it was brought under § 3461, it is clear that no appeal lay from the decision of the commissioners. *Cockcroft's Appeal*, 60 Conn. 161. If brought under § 8 of the Special Act of 1895, the case last cited is decisive against the right of appeal, because the land under that section is to be taken, so far as the present question is concerned, "in the same manner" as is provided for in § 3461; and if it can be regarded as brought under both the Special Act and § 3461, the right of appeal does not exist.

It follows that no appeal lay from the decision of the com-

missioners upon either petition, and consequently the Superior Court had no jurisdiction of the subject-matter attempted to be brought before it by the appeal.

In this view of the case the rulings of the court complained of, with reference to the filing of the plea, and upon the demurrer, and the other pleadings, and the motions, as set forth upon the record, become of no importance. Legally speaking none of these matters were properly before the court. As soon as the fact that it had no jurisdiction of the subject-matter was in any way brought to the attention of the court, it was its duty to dismiss the appeal. *Olmstead's Appeal*, 43 Conn. 110; *Denton* v. *Danbury*, 48 id. 368; *Camp* v. *Stevens*, 45 id. 92; *Orcutt's Appeal*, 61 id. 378–380.

The formal plea filed in this case was one way and an orderly way of bringing to the attention of the court certain facts that, upon the case as stated in the appeal, or otherwise, did not appear, namely, the precise nature of the petitions brought to the railroad commissioners, and the circumstances out of which they grew and under which they were brought. When these facts were made to appear and the court saw that it had no jurisdiction of the subject-matter of the appeal, then, without reference to its other rulings, it was its duty to go no farther in the consideration of the case, and to dismiss it. In the former appeal to this court in this cause (70 Conn. 326), it was held, in effect, that in the then state of the record, the appeal from the decision of the commissioners could be regarded as taken under the general statutes relating to the elimination of grade crossings, and would therefore lie, and that there was nothing then on the record to show, nor could the trial court know from the record, that it was taken from decisions made under the Special Act of 1895 or under § 3461 of the General Statutes. Under these circumstances it was held error to erase the case from the docket. There is nothing in the opinion in that case inconsistent with the conclusion reached in this. The facts set up in the plea in this case supply what was wanting in the former case, and show clearly that the decision or decisions of the commissioners appealed from, were made under the Special Act or under

§ 3461, and consequently that an appeal from them did not lie, and the Superior Court had no jurisdiction.

There is no error.

In this opinion the other judges concurred.