## THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY *vs.* JOHN M. WHEELER ET AL.

Third Judicial District, Bridgeport, Oct. Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A resolution of the General Assembly (12 Special Laws, 416) directed the abolition of all grade-crossings in the city of Bridgeport, empowered the railroad commissioners themselves to determine the methods and plans therefor, or to approve such as might be agreed upon by the railroad company and the city, including the proportion of the entire expense which each should pay, and provided that upon such approval the agreement should be deemed an order of the railroad commissioners and be enforceable by mandamus. The resolution also declared that for the purpose of making such agreement the mayor and two other citizens named therein might act for the city. After an agreement—which involved the building of additional tracks as well as the removal of grade-crossings, and bound the city to pay one sixth of the ultimate cost not exceeding $400,000—had been made and approved by the railroad commissioners, the plaintiff sought to have appraisers appointed to esti-

mate damages accruing to the defendants from the taking of their land for the purpose of carrying said agreement into effect. *Held:* —

1. That the constitutionality of the provision authorizing the imposition of a portion of the cost of the improvement upon the city, was a question in which the landowner, as such, had no legal interest, and one which could not properly be considered in the condemnation proceedings instituted by the plaintiff.

2. That an execution of the agreement in the manner specified in the resolution was all that was essential to make it obligatory upon the city. But if this were not so, and the failure of the municipal authorities to sign or ratify the agreement rendered it ineffective, its terms and provisions would still be operative as an order of the railroad commissioners, regardless of the city's consent.

A party is not entitled to corrections in a finding which are not material to present the questions of law raised on the trial.

An answer which consists merely of a repetition of the averments of an overruled demurrer, is not a proper plea and may be stricken out on motion.

Argued November 2d, 1899—decided January 2d, 1900.

APPLICATION for the appointment of appraisers to estimate the damages to the defendants from the taking of their land for railroad uses, brought to and heard by the *Hon. Ralph Wheeler*, a judge of the Superior Court; facts found and judgment rendered in favor of the plaintiff, and appeal by the defendants for alleged errors in the rulings of the judge. *No error.*

The following are the allegations of the application : " 1. On December 21st, 1895, said railroad company and the city of Bridgeport, under the provisions of and by authority of a Special Act of the General Assembly of the State of Connecticut, passed at its January Session, 1895, and entitled an Act 'Providing for the Abolition of Grade Crossings in Bridgeport' duly executed a certain agreement. 2. On December 21st, 1895, said railroad company and said city, pursuant to the provisions of said Special Act, brought their application to the railroad commissioners of this State for their approval of said agreement. 3. On January 23d, 1896, said railroad commissioners, after due notice and hearing, made their order and finding approving said agreement and each and every of its provisions, and the same thereby became and

ever since has been and still is an order of said railroad commissioners, as to all matters therein contained or referred to. 4. A copy of said agreement and of the plans therein referred to and made a part thereof, and of said order and finding of said railroad commissioners approving the same, are on file in the offices of the town clerk and of the city clerk in said city of Bridgeport, reference to which is hereby had, and the same are made a part of this application. 5. In order properly to carry out in any and all particulars, as called for in said plans, the work imposed upon said railroad company by said Special Act and agreement and said order and finding of said railroad commissioners, said company deemed it necessary to take all those certain pieces or parcels of land as shown on said plans, and on July 11th, 1896, the board of directors of said company passed the following resolution, viz : ' *Resolved,* That this company, with the approval of the railroad commissioners, so far alters the location of its road in the city of Bridgeport, as to change the radius of its curves, straighten and improve its lines, width and extent of depot grounds, slopes and embankments, and extend its lines of sight, and for said purposes, and for additional tracks, turnouts, freight and passenger stations and depots, hereby takes all those certain pieces or parcels of land as shown on plans referred to in a certain agreement between this company and said city, dated the 21st day of December, 1895,' (and thereby took said land subject to the approval thereof by said railroad commissioners). 6. The following described land constitutes one of said certain pieces or parcels of land shown on said plans referred to in said agreement, (a description of the land follows). 7. John M. Wheeler and William T. Howes, both of said Bridgeport, partners in business, under the firm name of Wheeler & Howes, are and for more than five years last past have been the owners of the above described land. 8. On June 30th, 1897, the railroad commissioners of this State, after due notice to said Wheeler & Howes, and after due hearing had, made their order and finding approving the taking by said railroad company of the above described land. 9. The applicant railroad com-

pany, though it has endeavored so to do, cannot obtain said land described in paragraph 6 hereof by agreement with the said Wheeler & Howes. Wherefore your applicant respectfully requests your Honor to appoint appraisers to estimate all damages that may arise to the above mentioned Wheeler & Howes, from the taking and occupation of said real estate for the purposes hereinbefore set forth, in the same manner as is now provided by statute for taking land for railroad purposes."

To this application the defendants demurred upon grounds which are sufficiently stated in the opinion.

The Special Act of 1895, and the agreement referred to in paragraph 1 of the application, are given in the opinion and foot note in the case of *Mooney* v. *Clark*, 69 Conn. 241, 244, 249.

The application to the railroad commissioners referred to in paragraph 2, and the orders of the railroad commissioners referred to in paragraphs 3 and 8, appear in the statement of facts in the case of *Wheeler et al.* v. *New York, N. H. & H. R. Co.*, 71 Conn. 270, 271.

The judge overruled the demurrer and the defendants filed an answer consisting of two separate defenses, the first of which admitted certain paragraphs of the application and denied the remainder. The second defense was a repetition of certain averments of the demurrer. The judge, upon plaintiff's motion, ordered the second defense stricken out.

Upon the issue raised by the first defense the judge found the allegations of the application true, and that the city had assented to and ratified the agreement referred to in the application.

The minutes and record of the action of the common council of the city of Bridgeport, offered in evidence by the plaintiff upon the trial for the purpose of showing any action by the city of Bridgeport approving, ratifying, consenting to or acquiescing in said Special Act of the legislature, or any proceedings thereunder, were objected to by the defendants as

irrelevant, but the judge overruled said objection and admitted said evidence for said purpose.

The defendants moved for a correction of the finding, which was refused, and certain evidence was certified to this court at the request of the defendants.

The overruling of defendants' demurrer, the striking out of the second defense, the admission in evidence of the minutes and records of the common council and the finding therefrom of a ratification of said agreement by the city, the overruling of the claims of law set forth in the finding of facts, and the defendants' exceptions to the judge's finding and refusal to find certain facts, are the reasons of appeal assigned.

The defendants' claims of law set forth in the finding are sufficiently stated in the opinion.

*Robert E. DeForest* and *George P. Carroll*, for the appellants (defendants).

*William D. Bishop, Jr.*, with whom was *Goodwin Stoddard*, for the appellee (plaintiff).

HALL, J.  This is an application by the New York, New Haven and Hartford Railroad Company to a judge of the Superior Court, under § 3464 of the General Statutes, for the appointment of appraisers to estimate the damages from the taking of certain real estate belonging to the defendants. By the terms of the statute any railroad company is entitled to have such appraisers appointed, upon proof that it has the right to take the land in question for railroad purposes and that it cannot obtain it by agreement with the parties interested therein.

The defendants object to the appointment of appraisers, upon the grounds that the plaintiff has no right to take this property, and that it is not unable to obtain it by agreement with the owners.  The reasons of the defendants' claim that the railroad company has no right to take the land in question, are fully set forth in the demurrer to the application

and in the claims made by the defendants upon the trial of the issue raised by the first defense. Stated generally, their claim upon this point is that no valid order for the performance of the work in question has been made. First, because the agreement entered into under § 2 of the Special Act of 1895 (Special Laws of 1895, 416), which provides for the construction of a four-track railroad over the defendants' land, according to plans made a part thereof, and for the apportionment of the expense between the city of Bridgeport and the railroad company, as therein stated, was neither executed nor ratified by the city of Bridgeport, nor presented by the city to the railroad commissioners for approval, as intended by the Act. Second—if the agreement was executed in the manner contemplated by the Act—because the provision in said agreement or order apportioning the cost of the work between the railroad company and the city and imposing upon the latter the burden of paying a one sixth part, not exceeding $400,000, of the entire cost of constructing a four-track elevated railroad through the city of Bridgeport in place of the existing double-track road, is in contravention of the 25th amendment of the State Constitution and of § 1 of the 14th amendment of the Constitution of the United States, and therefore said agreement and order, and the Special Act under which they were made, are void, and confer no authority upon the railroad company to perform the work in question or to take the defendants' property by this proceeding.

Regarding the first reason of the defendants' claim, we are of opinion that the failure of the city of Bridgeport to take any action, either by resolution of its common council or by vote of its citizens, to authorize the execution of the agreement, or to ratify it after its execution by the railroad company and by the individuals named in § 2 of the Act of 1895, or to request its approval by the board of railroad commissioners, furnishes no reason why the railroad company may not and should not proceed with the work of constructing the four-track railroad through the city of Bridgeport, in accordance with the plans embraced in the agreement, and

of removing the dangerous grade-crossings as ordered by the railroad commissioners, nor why the railroad company may not, upon payment of just compensation, take the defendants' land for that purpose.

Section 2 of the Act appoints three persons to act for the city for the purpose of making said agreement. It does not provide that it shall be executed or approved by any other persons or body acting in behalf of the city, nor that the city must join with the railroad company in requesting its approval by the railroad commissioners. We do not think the Act contemplated that the city should appoint agents to execute the agreement, or that after its execution it should be ratified or approved by the common council of Bridgeport before it could become effective as a part of the commissioners' order, or that the city should request its approval by the commissioners before the latter could approve it.

Neither the right of the railroad company to construct a four-track road in accordance with the proposed plans, nor the power of the legislature, or of its agents, the railroad commissioners, to order the removal of the grade-crossings in that manner, depends upon the consent of the city.

By the Special Act of 1895 the legislature expressly commanded that all crossings at grade over the main tracks of the New York, New Haven and Hartford Railroad Company, in the city of Bridgeport, should be abolished. To carry out that purpose, and at the same time to enable the railroad company to complete its four-track system between New York and New Haven by constructing two additional main tracks through Bridgeport, so that they should not cross any highway at grade, it empowered the railroad commissioners to determine and direct by what plans and methods these objects should be accomplished, and also to apportion the expense. For the purpose of facilitating the performance by the railroad commissioners of the duty thus imposed, it empowered them, in ordering the performance of this work, to approve and adopt such plan of construction, as well as such apportionment of the expense of the removal of the grade-crossings by that plan, as might be agreed upon with-

in six months by the railroad company and the mayor and two other citizens of Bridgeport appointed to act for the city. Section 4 directed the commissioners themselves to determine the plans and methods of performing this work, in case the agreement provided for in § 2 should not have been made. If the Act intended that the agreement described in § 2 should either be executed by agents appointed by the city, or in some manner adopted or ratified by the city after its execution by the three persons named by the legislature, then the agreement provided for by the Act not having been made, the commissioners were fully authorized by § 4 to adopt as their own the plans of construction described in the so-called agreement, and, upon the application of the railroad company, as made in December, 1895, and after the public hearing had in January, 1896, to order the work executed according to those plans; and this they expressly did by their order made January 23d, 1896, more than six months after the passage of the Special Act.

But, as before suggested, we think that the agreement entered into by the railroad company and the three persons who acted in behalf of the city was executed as the Act intended. It has been duly approved by the commissioners, and has thereby, by the terms of the second section of the Act, become an order of the railroad commissioners issued by authority of the State, obedience to which may be compelled by mandamus. *Mooney* v. *Clark*, 69 Conn. 241, 254; *Wheeler* v. *New York, N. H. & H. R. Co.*, 71 id. 270, 279. That the legislature has the power, through the railroad commissioners, to compel the removal of these grade-crossings in this manner, and the payment of the expense of such removal, either by the railroad company or the city, or by both, cannot be questioned. *Woodruff* v. *Catlin*, 54 Conn. 277, 295; *New York & N. E. R. Co.* v. *Bristol*, 151 U. S. 556; *Mooney* v. *Clark, supra.*

The order of the railroad commissioners having been thus made, § 8 of the Act empowers the plaintiff to take any land which it " shall deem necessary properly to carry out said work in any and all particulars, . . . in the same manner as is now

provided by statute for taking land for railroad purposes." The railroad company, proceeding in the manner required by § 3461 of the General Statutes, voted to take the defendants' land for the purpose of changing the radius of its curves and for additional tracks, as stated in the resolution of its board of directors, and such taking was duly approved by the action of the railroad commissioners June 30th, 1897.

The Act of 1895, therefore, gives to the plaintiff company the right, upon the payment of due compensation, to take the defendants' land for the railroad purposes described in said resolution, unless the provisions of § 8 are rendered ineffective because some other parts of the Act, or of the agreement or order made in pursuance of it, conflict with the Constitution of this State or of the United States, as claimed by the defendants.

The necessity and propriety of taking this land by the plaintiff for railroad purposes is conclusively settled by the vote of the railroad company to take it, and the action of the railroad commissioners of June 30th, 1897, approving such taking. *Cockcroft's Appeal*, 60 Conn. 161. The taking of land for the railroad purposes described in the vote of the board of directors of the company, is a taking of land for a public use, and a law which makes the decision of the railroad company and of the commissioners final upon the question of the necessity and propriety of taking certain land for such railroad purposes is not for that reason unconstitutional. *New York, N. H. & H. R. Co.* v. *Long*, 69 Conn. 424, 435.

This is not a proceeding in which the owner of property sought to be condemned attempts to show that it was not in fact taken for a public use. That the land is to be used by the railroad company for the purposes named in the vote of its directors, in the construction of its four-track railroad, is not questioned. The contention of the defendants is that it is to be used, either wholly or in part, for railroad purposes which are not germane to the work of removing grade-crossings. Whether taken merely to enable the railroad company to straighten its lines and construct additional tracks, or taken only for the purpose of constructing a railroad so as to avoid

crossings, the taking is in either case for railroad purposes, and is a taking for a public use. *New York, N. H. & H. R. Co. v. Long, supra.*

Since the commissioners had authority, without the consent of the city, to order this work to be performed, according to the plans adopted, and have so directed it to be done, and since the necessity and propriety of taking the land in question for railroad purposes has been finally determined, can the defendants, by questioning in this proceeding the validity of the apportionment between the city and the railroad company of the expense of the removal of the grade-crossings, prevent the plaintiff from constructing in accordance with those plans the four-track railroad through the city, which its business requires, and from removing the grade-crossings in the manner ordered?

Sections 2 and 12 of the Special Act provide that the railroad commissioners, by approving the agreement made under § 2, as to the amount to be paid by the city, or, in case no such agreement shall have been made, by fixing the amount themselves after the work shall have been performed, shall direct what proportion of the entire expense of removing the grade-crossings in the manner ordered shall be paid by the city of Bridgeport. Pursuant to these provisions the commissioners, by approving the agreement, have ordered that the city shall pay a one sixth part, not exceeding $400,000, of the entire expense of constructing the road in accordance with the plans.

The defendants contend that by this agreement and order, and by the plans made a part thereof, the city will not only be required to pay a part of the cost of elevating the existing double-track above the highways, but also to contribute to the payment of the expense incurred by the railroad company in taking land and building a drawbridge and doing other acts for the purpose of constructing two additional elevated tracks not necessary to the work of eliminating grade-crossings. It is argued that the Act and the agreement and order imposing such an obligation upon the city, violate that provision of the State Constitution which forbids any municipality from

making any donation to a railroad corporation, and that provision of the Constitution of the United States which forbids the State from depriving any person of property without due process of law; that therefore the order of the commissioners made under this Act, permitting the railroad company to construct its four-track road and requiring it to proceed with the work of the removal of the grade-crossings, is invalid, and that the railroad company cannot under this order or under this Act condemn the defendants' land.

If the railroad company desires to take this property as one step in carrying out the proposed plan, the defendants cannot prevent it upon the ground that the company may not afterwards be able to obtain reimbursement from the city. The ability of the defendants to obtain payment of their damages does not depend upon the right of the railroad company to collect a part of it from the city. Before taking the land the company must compensate the defendants.

Even if this proceeding could be regarded as one in which the judgment appointing appraisers established to some extent the liability of the city to pay its proportionate part of the expense as fixed by the agreement and order, and in which the city or its taxpayers might properly make the claim that the apportionment of the expense was unlawful, such a defense would not be open to these defendants upon the facts before us. By the pleadings the defendants are simply owners of the property sought to be taken. They have not alleged that they are taxpayers, or that they have any right or authority to represent the city or its taxpayers in this proceeding, or that they will be injured in any respect from the payment by the city of its part of the expense of the work as fixed by the agreement and order. But the appointment of appraisers in this proceeding does not affect the question of the liability of the city to pay that part of the expense ordered by the commissioners. The right of the railroad company to have appraisers appointed and to take this property, does not depend upon the obligation of the city to pay a one sixth part of the expense of the whole, or of any portion of the work of this undertaking.

The two purposes of the Act of 1895 were, first, the removal of all existing grade-crossings in Bridgeport, and the construction in the most feasible manner—after considering the interest of the public, the rights, responsibilities and duties of the railroad company and of the city, and the rights of other parties concerned—of a four-track railroad through the city in such a way as to avoid crossing any highway at grade; and second, a just apportionment of the cost· among those who ought to bear the expense of performing the work in the manner determined. These two purposes are so far distinct and separable, and are so intended to be by the Act, that neither the right of the railroad company to perform the work according to the plans approved by commissioners, nor the power of the commissioners to compel its performance, depends upon a previous apportionment of the expense between the parties who should bear it. Section 12, as we have already said, provides that if no agreement shall have been made as authorized by § 2, the commissioners, after the work shall have been completed, shall apportion the entire expense among the proper parties.

We may add that the right of the railroad company to condemn the defendants' property does not depend upon the validity of any part of the Special Act of 1895, since by the resolution of the board of directors of the company · in July, 1896, and by the approval of the commissioners in June, 1897, both of which are alleged in this application, the railroad company is entitled, under § 3461 of the General Statutes, to take the land for the uses named in the resolution.

Without intending to imply that the agreement and order fixing the proportionate part of the entire expense of this work to be paid by the city, is of doubtful validity, we refrain from further discussion of the subject, as we think the question is one which cannot properly be raised in this proceeding.

The question of the inability of the plaintiff to obtain the land from the defendants by agreement, was one of fact, upon which the interview described in paragraphs 17 and 18 of the

defendants' proposed finding was relevant evidence.* Even though by a correction of the finding it should be made to appear that that was all the evidence upon the subject, we could not review the conclusion of the judge upon that question.

The defendants are not entitled to the other corrections of the finding asked for, since the record before us contains all the facts necessary for the presentation of the questions of law raised at the trial.

As the plaintiff was entitled to have appraisers appointed, without having shown that the agreement in question was executed or ratified by the city, neither the rulings of the judge admitting evidence to prove those facts, nor his finding from such evidence, worked any harm to the defendants.

There was no error in striking out the second defense. It was not a proper special defense, and there was no reasonable ground for pleading it as such. It was merely a repetition of averments contained in the demurrer, and therefore by the defendants' admission was no more than a statement of facts appearing in the application, and of claims of law made in the demurrer. By the demurrer, and by the first defense,

---

* Paragraphs 17 and 18 of proposed finding. 17. Two or three days before this application was presented to the judge of the Superior Court and after the papers had been prepared for the same, the representative of the applicant requested the defendants to come to the office of Messrs. Stoddard and Bishop in the city of Bridgeport. The purpose of the invitation was not announced. 18. The defendants met the representatives of the applicant pursuant to said request. The defendants upon inquiry stated to William D. Bishop, Sr., who represented the applicant, that on a previous occasion there had been certain negotiations between them and one James Staples, representing the applicants, relative to the value of the defendants' said land and the damages resulting to them, if it were taken as proposed by the applicant—but that no agreement had been reached. Mr. Bishop thereupon informed the defendants that if he owned the property and could obtain a certain tract lying and adjoining said property on the south, and also a quitclaim from the applicant of all its interest in the ground now covered by the present layout and tracks of the applicant road and $15,000 in cash, he would think he was amply paid for the damages involved in the new layout through the defendants' land. The interview thereupon ended.

the defendants had the full benefit of all claims of law and fact made by the second defense.

There is no error.

In this opinion the other judges concurred.