EDWIN A. HENDRICKS v. CITY OF MINNEAPOLIS AND OTHERS.
FRANK J. COLLINS, INTERVENER.[1]

February 9, 1940.

No. 32,409.

[1]Reported in 290 N. W. 428.

152

*Thomas O. Kachelmacher,* for plaintiff-appellant.
*Jacob Garon,* for intervener-appellant.
*R. S. Wiggin,* City Attorney, and *John F. Bonner,* Assistant City Attorney, for respondents.

STONE, JUSTICE.

Plaintiff, Hendricks, a taxpayer, sues to enjoin the city of Minneapolis from entering into a contract for the installation of parking meters in a restricted area of its "loop" district. Reinforcing plaintiff, Mr. Collins intervened as a taxpayer claiming a special interest by reason of ownership of an automobile and tenancy in a building located in the proposed parking meter zone. From the order denying a temporary injunction, plaintiff and intervener appeal.

After investigation to determine their practicability, the city council decided to install automatic parking meters and directed the purchasing agent and city engineer to draw plans and specifications. Bids were invited. There were two, one by the Dual Parking Meter Corporation and one by the Graybar Electric Corporation. The former was successful. One provision in the specifications, relating to the method of installation, read as follows:

"The contractor is to install the meters under the supervision of the City Engineer who will, likewise, locate all meters. The City Engineer shall specify the method of installation with due respect for underground vaults, conduits, pipes, etc."

The lowest and successful bid was $49.50 for each of 1,100 machines. Attached was the alternative that $2.00 could be deducted if the bidder's method of installation be used. The bid was accepted at $47.50.

At the outset it should be said that the grounds of attack present questions of fact. There has been no trial, the matter being submitted below on affidavits. So there are issues which cannot be finally determined at this stage.

1. The first point for appellant is that the specifications were discriminatory. The law is settled that municipal authorities must frame such specifications so as to permit "free and full competition." Diamond v. City of Mankato, 89 Minn. 48, 53, 93 N. W. 911, 61 L. R. A. 448. That does not deny the city's right, within reasonable limitations, to require bidders to meet proper standards. The city can, within reason, require specific materials or particular methods of financing so long as the requirements are in the best interests of its inhabitants, and this although the effect is somewhat to limit the number of possible bidders. Davies v. Village of Madelia, 205 Minn. 526, 287 N. W. 1, 123 A. L. R. 569.

The specifications in some respects were quite detailed. For example:

"The portion of the pallet which engages the teeth of the escapement wheel shall be of monel metal or steel."

If there is good reason in this instance (and others where the specifications were just as specific and narrow) why such materials should be required rather than others, the provision is not discriminatory even though it restricted the field of bidders. If, on the other hand, no sound reason exists for such requirement, the provision is discriminatory even though some manufacturers could comply.

It is alleged that the specifications were built around the parking meters made by the Dual company; that they were the only ones able to comply, and that the bid of the Graybar company did not do so. The complete facts are not before us. The trial

court can be depended upon to scrutinize the transaction for evidence of unlawful discrimination.

2. The next assault is upon a supposed variance between specifications and successful bid. The point is that the specifications called for supervision of installation by the city engineer, while the bid called for the bidder's method of installation. Even so, the specification controls. It remains for the city engineer to "specify the method of installation with due respect for underground vaults," etc. At the present stage, we see no substantial variance.

3. The next argument is that the contract calls for illegal appropriation of public funds for the benefit of a private corporation. The meters were to be paid for from their own collections. Each month, until the price is paid, the city treasurer is to remit 60 per cent of the receipts from meters operating on an hour basis and 30 per cent from those on a shorter period. The balance is to be used as the council shall prescribe. Even though not paid for at the end of 12 months, the meters are to become property of the city, with no further cost. We see no ground for challenge here. Municipalities have the power to purchase equipment and finance it by the revenue derived from its use. Williams v. Village of Kenyon, 187 Minn. 161, 244 N. W. 558.

It is also charged that there is attempt to violate the city charter by paying money from the meters directly to the contractor rather than into the current expense fund of the city. The ordinance makes no such provision. It may be construed to require deposit of the meter receipts in the current expense fund, payments to be made therefrom. The parking meter ordinance itself may be a sufficient appropriation. If not, the council can make the appropriations as needed.

4. Finally, it is urged that the ordinance is a revenue and not a regulatory measure because the fee for metered parking is excessive. The ordinance must stand if a regulation and fall if a tax. City of Mankato v. Fowler, 32 Minn. 364, 20 N. W. 361; State ex rel. Harkow v. McCarthy, 126 Fla. 433, 171 So. 314.

This is because, although, as the city contends, it has the power to regulate parking (3 Mason Minn. St. 1938 Supp. § 2720-158), it has no power to tax it.

"The distinction between the taxing power and the police power will be found in the purpose for which the particular power is exercised." City of Buffalo v. Stevenson, 207 N. Y. 258, 263, 100 N. E. 798, 800. The declarations of the ordinance are relevant, although not conclusive. The ordinance requires a fee of five cents for parking an hour, or, in some places, for half an hour. The ordinance declares this amount to be "levied and assessed as a fee to cover the cost of inspection and regulation, control and operation."

The claim is that five cents is an excessive charge and will result in receipts far beyond the cost of enforcement and regulation. If so, the ordinance must fall as a revenue measure. City of Mankato v. Fowler, 32 Minn. 364, 20 N. W. 361; State ex rel. Harkow v. McCarthy, 126 Fla. 433, 171 So. 314; Clark v. City of New Castle, 32 D. & C. 371, 382 (1938). In the last cited case it was said that such would be the result if there was a "lack of proportion between the cost of the service rendered and the fee actually charged."

In a case of this kind, with no actual trial of the system and the claims of plaintiff and defendant in conflict as to reasonableness of the fee, it would require a clear showing by plaintiff to demonstrate that the fee is too high. It would not be enough to show that the fee will exceed the cost for one period, or by a small amount. It must be made plain that the scheme of the ordinance is such that receipts will continuously and by a substantial amount exceed the cost of installation, maintenance, and regulation.

The city may intend by this means to pay for the whole cost of the regulation of parking—the cost of the machines, their repair, the pay of the policemen who will be required to enforce the ordinance, and generally the expense of providing and keeping clear places in which drivers may park. In the face of the city's

showing, by affidavits narrating the experience of other cities with parking meters, we cannot now say that it clearly appears that the fee is a tax.

The wisdom, or lack of it, of the project, presents no question for judges. If in that field there is error, the appeal is to the voters, not the courts. The executive and legislative departments of government have, properly, an extensive field of action, wherein, if they err, there results no justiciable question. The resulting political issue, if any, is not for settlement in court.

Here no public money is to be spent in installation or purchase. Pending trial and decision of the legal issues, the parties (particularly the contractor) will proceed at their own risk—not that of the city treasury.

Because all the issues are of fact, yet to be tried and finally determined, and because there is no proof of abuse of discretion (Behrens v. City of Minneapolis, 199 Minn. 363, 271 N. W. 814) we cannot reverse. It is not to be thought that, if proper showing is made, the case will not be advanced for trial. The public interest is apparent, and the issues are important.

We have passed as without merit a claim that in drawing the specifications the city engineer usurped the function of the council. It is enough that there was complete ratification by the council.

All the issues remain for final decision below, including that of the right of plaintiff and intervener to sue.

Order affirmed.