M. H. RHODES, INCORPORATED, AND VEHICULAR PARKING, LIMITED, v. CITY OF RALEIGH.

(Filed 8 June, 1940.)

**1. Appeal and Error § 40g—**

The Supreme Court will not decide the constitutionality of an ordinance when the appeal may be determined on the ground of want of statutory power in the municipality to establish the regulation, unless strong considerations of public necessity appear.

**2. Municipal Corporations § 36—**

A municipality has only that police power given it by statute, and since such statutes involve matters of common right, they must be strictly construed.

**3. Municipal Corporations § 39—**

A municipality may enact ordinances providing reasonable regulations for the use of its streets for the parking of motor vehicles, but the restrictions imposed must have some reasonable relation to the conditions sought to be remedied.

**4. Same—**

There is no reasonable relationship between the imposition of a meter charge for use of parking spaces within the time limits allowed by ordinance and the prevention of the use of a parking space by the same car for an unreasonable time to the detriment of the rights of others.

**5. Same—**

A meter charge for the use of parking space cannot be upheld on the ground that the charge is an inspection fee, since the object of the charge is solely to prevent the violation of parking ordinances or to detect and prove such violations, and bears no relation to fees imposed to defray the expense of inspecting a business or merchandise, the inspection of which is necessary to the public health, safety and welfare.

**6. Same—**

A meter charge imposed by a municipality for the parking of motor vehicles is in effect a revenue measure imposing an excise tax for the privilege of using parking space, and the municipality is without authority to impose such tax, municipalities being limited by the Motor Vehicle Act, chapter 2, section 29, Public Laws of 1921; Michie's Code, 2612 (a), to the imposition of a $1.00 license fee upon each local vehicle.

DEVIN, J., dissents.

APPEAL by defendant from *Harris, J.,* at May Criminal Term, 1940, of WAKE. Reversed.

This is an action brought by the plaintiffs to secure a declaratory judgment construing certain ordinances of the city of Raleigh relating to parking meters, passing upon their validity, and declaring the relation of the parties thereto.

The plaintiffs complained that they had sold to the city of Raleigh a number of parking meters under certain ordinances relating to their establishment enacted by the City Council.

The parking meters are described as coin-slot devices permanently fixed at the street curb line in front of the space marked for the parking of motor vehicles. They are operated by the insertion of an appropriate coin according to the time during which the car is permitted to remain parked. Their operation, the parking privilege thus secured, and the general purport of the ordinances and procedure thereunder may be better understood by the citation of pertinent parts of the ordinances.

These provide for the establishment of parking meter zones, wherein motor vehicles may be parked during certain periods of time on every day except Sunday, and provide for the installation of "parking meters" in spaces designated on the streets. They further provide: "When any vehicle is parked in any space . . . in front of which is located a parking meter, the . . . driver of said vehicle shall, upon entering the said parking space, immediately deposit a five-cent coin, or a one-cent coin, depending upon the length of time said . . . driver shall require, in the parking meter . . . in front of said parking space, and shall set said meter in accordance with instructions contained thereon; and the said parking space may then be used by such vehicle during the parking limits provided. . . . If said vehicle shall remain parked in such parking space beyond the period of one hour upon the deposit of a five-cent coin, or a period of twelve minutes upon the deposit of a one-cent coin, the said parking meter shall display a sign indicating illegal parking, and in that event such vehicle shall be considered parked over-time."

The ordinances provide penalties for parking over-time and for other violations of their provisions, limit the consecutive depositing of coins, provide for loading zones, etc.

It is provided: "The five and one-cent coins required to be deposited as provided in this Ordinance are hereby levied as police regulation, traffic control, and inspection fees to cover the cost of inspection and regulation involved in the inspection, installation, operation, control and use of the parking spaces, parking meters and traffic control described herein and involved in checking up and regulating traffic and the parking of vehicles in the parking meter zone created hereby."

"This Ordinance being a police and traffic regulation and in the interest of the public safety, shall take effect from and after the date of its passage."

The complaint states that the zone marked out for parking under this plan was under an ordinance prescribing the general one-hour parking limit prior to the revision brought about by the cited ordinances.

Plaintiff company and the city of Raleigh entered into contract for the sale and installation of parking meters distributed by plaintiffs, under which the meters and installation thereof should be paid for by the city. The contract was not to come into effect until the validity of the ordinances and the right of the city, under the Constitution of North Carolina and appropriate statutes, to install and operate the parking meters, should be passed upon by the Court.

The defendant agreed with the plaintiffs for the installation of other parking meters under the ordinances cited, or similar ordinances, and the defendant has refused to go further with the contract until the ordinances have been made the subject of a declaratory judgment of the Court sustaining their validity.

Upon the hearing of the matter before Judge Harris, the power of the municipality to purchase, install, and operate parking meters, as described in the pleadings and in the ordinances, was sustained, and the ordinances held to be valid. From the judgment, the defendant appealed.

*Royall, Gosney & Smith for plaintiffs, appellees.*
*Bunn & Arendell for defendant, appellant.*

SEAWELL, J. The appellant contends that the defendant city had no constitutional or statutory authority to enact an ordinance imposing a charge for parking in the streets. The appellees contend that the city does have such power under the following statutes: C. S., 2787 (11), authorizing municipalities "to adopt such ordinances for the regulation and use of the streets as it may deem best for the public welfare of the citizens of the city; C. S., 2787 (31), authorizing municipalities "to provide for the regulation, diversion, and limitation of vehicular traffic on public streets and highways" for public safety; C. S., 2793, relating to streets, giving the municipality authority to "regulate and control the

use thereof by vehicle"; C. S., 2789, declaring that the particular powers given by the act shall not be deemed exclusive, but that the city shall have and exercise all other powers which are now or may be hereafter granted to cities under the laws of the State; C. S., 2787 (29), authorizing the municipality "to provide for all inspections which may be expedient, proper, or necessary for the welfare, safety and health of the city and its citizens and regulate the fees for such inspection"; C. S., 2787 (7), authorizing the municipality "to pass such ordinances as are expedient for maintaining and promoting the peace, good government, and welfare of the city, and the morals and happiness of its citizens, and the performance of all municipal functions"; C. S., 2623 (5), giving the city authority to make such orders for the use of its property "as the interests of the town require"; C. S., 2623 (7) (9), conferring general powers to provide for municipal government and to do what is necessary therefor; C. S., 2673, authorizing the municipality to enact such ordinances, not inconsistent with the statutes, as the governing body may deem necessary for the better government of the town; C. S., 2787 (5), giving authority for a municipality to "regulate" all public works and improvements; and C. S., 2787 (1), authorizing abatement of nuisances on public property.

The list of statutes upon which plaintiffs rely seems to be exhaustive.

It is a settled policy of this Court not to pass upon the constitutionality of a measure, when its validity may be decided upon other questions presented, unless strong considerations of public necessity appear.

A careful examination of the statutes called to our attention leads us to the conclusion that none of them confers upon the city the necessary authority to enact ordinances imposing a parking fee, or charge for a parking space, or an inspection fee in connection with the administration and enforcement of the law.

Ordinances passed under authority of any or all of the statutes mentioned must be referred to the exercise of the police power. We think it is recognized by the litigant parties that the police powers of municipalities are not implied from sovereignty imparted to them for governmental purposes. Such as they have are conferred by statute, and their exercise, where matters of common right are involved, are subject to strict construction. *Slaughter v. O'Berry,* 126 N. C., 181, 35 S. E., 241; *S. v. Burbage,* 172 N. C., 876, 878, 99 S. E., 795.

The powers conferred by the statutes cited are broad enough to cover the exercise of the police power in the regulation of traffic on the streets, undoubtedly, and authorize the enactment of ordinances providing reasonable regulations for their use in parking, subject to the principle we have just stated—that the exercise of police power in this regard must be strictly construed. But the mere fact that such activity—that is, use of

the streets in parking—is a proper subject of police regulation, does not mean that any sort of restriction, whether appropriate or inappropriate, may be applied at discretion.

We do not attempt to make a choice of remedies for the municipality where both may be legitimate, but there must be some reasonable relation between the restriction applied and the condition sought to be remedied, otherwise the restriction must be held to be invalid. *S. v. Harris,* 216 N. C., 746, 759; *Leggetts v. Baldridge,* 278 U. S., 105, 111; *Meyer v. Nebraska,* 262 U. S., 390, 67 L. Ed., 1042, 29 A. L. R., 1446.

Parking, generally speaking, is not the thing at which the corrective regulation is aimed. It is the occupation of the parking space by the same car for an unreasonable length of time, to the detriment of the rights of others. Fairly considered, we can find no substantial relation between the meter charge and the correction of this evil. The ordinances themselves discount such a claim, since their effectiveness does not depend in any way on the meter charge, but, as heretofore, upon a specification of the period during which it is lawful to park.

The validity of the ordinances is hardly to be sustained on the theory that the meter charge is a proper inspection fee which, in part at least, is its declared purpose. One who parks a motor vehicle is not, in that particular act, engaged in any business or enterprise demanding inspection, nor is he offering anything to the public the inspection of which is necessary to the public health, safety, or welfare. Under such a view of the meter charge, and its purpose, the person subjected to it is merely being forced to pay for the means used to prevent his violating the law, or for the detection and proof of such violation. On the same principle a charge might be made against any person in connection with his use of the streets in ordinary travel, to defray the expenses of supervising him personally, the expenses of the watch kept by the police to prevent his violation of any other traffic laws, or to facilitate his conviction for an infraction of the criminal law. Such an inspection we do not consider within the contemplation of the statute.

On examination of the whole record, and especially in view of the want of relation of the meter charge to the regulation sought to be effected, we do not find it free from suggestion that the meter charge is, in reality, an excise tax for the privilege of using the parking space, and, hence, a revenue measure. There is, of course, no statutory authority for the imposition of such a tax. On the contrary, any imposition which the city might make in that regard is, no doubt, limited by the Motor Vehicle Act, chapter 2, section 29, Public Laws 1921 (2612 a, Michie's Code), which provides a license fee of one dollar for such vehicle, applicable to local cars, presumably already imposed.

"A municipality cannot, under the guise of a public regulation, impose a revenue tax when it has no authority to impose a revenue tax." Cooley on Taxation, 4th Edition, section 1680; 3 McQuillin Mun. Corp., section 987. Nor does the mere power to regulate authorize the imposition of a tax on the privilege sought to be regulated. A municipal power to regulate an occupation does not include the power to compel the payment of an occupation tax as a method of police regulation. 3 McQuillin Mun. Corp., sections 986-990; Cooley on Taxation, 4th Ed., sec. 1680. We are of the opinion that the same principle applies to a statute authorizing the regulation, but not the taxation, of a privilege of the kind considered in the case at bar.

Whether constitutional laws may be enacted to give municipalities authority for the power here sought to be exercised, we do not attempt to determine. Other questions may be involved which can be met only when they arise. We only say that we find no such authority in the cited statutes, or others to which our research has extended.

The contracts made between the parties are made to depend upon the validity of the ordinances as declared by the Court. Since the ordinances are held to be invalid, the contracts are not enforceable.

The judgment of the court below is

Reversed.

Devin, J., dissents.