[No. 28033. *En Banc.* February 3, 1941.]

BROOKS KIMMEL, *Respondent,* v. THE CITY OF SPOKANE et al., *Appellants.*[1]

[1]Reported in 109 P. (2d) 1069.

G. M. Ferris, B. A. Farley, and Paul F. Schiffner, for appellants.

A. O. Colburn, for respondent.

The Attorney General, John E. Belcher, Assistant, Wright & Wright, A. C. Van Soelen, and John A. Homer, amici curiae.

BLAKE, J.—By this action, plaintiff challenges the constitutionality of ordinance No. C6860 of the city of Spokane, entitled:

"An ordinance relating to traffic and regulating the use of public streets and highways of the City of Spokane; providing for the installation, regulation and control of the use of parking meters; requiring the deposit of coins for the use of parking meters and

parking meter zones; defining parking meter zones; providing for the disposition of revenues derived from parking meters; providing for the enforcement thereof; defining offenses and providing penalties; and declaring an emergency."

Plaintiff is the lessee of a storeroom fronting on a street upon which a. meter zone was duly established pursuant to the provisions of the ordinance. He seeks to enjoin the installation of the parking meters on the ground that the parking of cars in front of his premises, as authorized by the ordinance, is an unlawful interference with his right of ingress and egress. The defendants interposed a demurrer to his complaint, which was overruled by the court. The defendants declined to plead further, and a decree was accordingly entered declaring the ordinance unconstitutional and enjoining the defendants from attempting to effectuate the purposes of the ordinance. Defendants appeal.

The sole question presented is whether the city has power to regulate traffic on the public streets in the manner provided by the ordinance: by the installation and maintenance of parking meters.

That the ordinance is a regulatory measure enacted under the police power, is not open to question on the record before us, although, at the argument, the suggestion was made that it is a revenue measure. But, since the declared purpose of the ordinance is regulatory, the court will not go behind the legislative declaration in the absence of evidence tending to show that the declaration is sham, and that the ordinance is, in reality, a revenue measure. *Seattle v. Barto*, 31 Wash. 141, 71 Pac. 735.

The constitution accords to municipalities plenary police power within their limits. Const., Art. XI, § 11. This power, of course, ceases when the state enacts a general law on a particular subject unless

there is room for concurrent jurisdiction. *Seattle Electric Co. v. Seattle,* 78 Wash. 203, 138 Pac. 892.

█ Respondent contends that the state, by Rem. Rev. Stat., Vol. 7A, § 6360-107 [P. C. § 2696-865], has exerted such power with respect to the parking of cars on city streets in a manner that brings ordinance No. C6860 in conflict. Rem. Rev. Stat., Vol. 7A, § 6360-107, is a part of the motor vehicle act, Laws of 1937, chapter 189, p. 835 (Rem. Rev. Stat., Vol. 7A, § 6360-1 *et seq.*). The section referred to specifically imposes some fourteen restrictions on the parking of cars on all highways. But it contains the following provisions:

"Parking or standing shall be permitted in the manner provided by law at all other places *except a time limit may be imposed or parking restricted at other places, but such limitations and restrictions shall be by city or town ordinance only or resolution of the county commissioners or of the director of highways upon public highways under their respective jurisdictions.*" (Italics ours.)

Furthermore, § 2 of the act, p. 844, provides:

"Local authorities may, however, adopt additional vehicle and traffic regulations which are not in conflict with the provisions of this act." Rem. Rev. Stat., Vol. 7A, § 6360-2 [P. C. § 2696-751].

By these provisions, there is clearly reserved to municipalities the power to impose additional restrictions on parking so long as they do not conflict with the restrictions imposed by the act itself. By the adoption of ordinance No. C6860, the city has declared its purpose to exercise that power. We are unable to perceive in the terms of the ordinance anything which conflicts with the provisions of the motor vehicle act. The ordinance simply imposes additional restrictions.

█ Respondent, nevertheless, contends that the

ordinance, in object and in terms, grants a *right* to automobile operators to occupy the streets for parking purposes. He argues that the streets are for travel, not for the storage of cars; that his rights as an occupant of abutting property are subservient only to the rights of the traveling public.

Theoretically, this argument is sound. It is one, however, that was invoked with the advent of modern water and sewerage systems, with the advent of the telephone and the trolley. The rights of the occupant of abutting property are not absolute even as against persons using the streets for purposes other than actual locomotion. Under the exigencies and complexities of modern life, it is impossible to guarantee to respondent free and uninterrupted access to his premises at all times. The use of streets and highways for the parking of motor vehicles has been too long and too well established by custom to now be denied because of the theoretical right of the occupant of abutting property to free and uninterrupted access to his premises at all times. Indeed, the custom of parking cars along the streets and highways may well be regarded as an incident to public travel. The custom has so long prevailed that it has received legislative recognition as a *right*. Rem. Rev. Stat., Vol. 7A, § 6360-107, provides: " . . . Parking or standing shall be permitted in the manner provided by law . . ."

On the other hand, the power of the state and of the municipalities to regulate the parking of cars on the streets and highways can not be doubted. Berry, Automobiles (5th ed.), 59, § 80; 1 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.), 67, § 78. With the exercise of that power, the courts will not interfere so long as it is invoked with reasonable regard for the rights of both the traveling public and the occupants of abutting property.

■ Ordinances prescribing time limitations on parking have long been recognized as a proper exercise of the police power, both in the interest of the occupant of abutting property and of the traveling public. Such limitations are designed to keep traffic moving, to minimize congestion, and, at the same time, to afford users of the highways an opportunity to transact business with the occupants of abutting property. Time limitations upon parking have been necessitated by abuse of the privilege. It is obviously to the interest of the occupant of abutting property that such time limitations be strictly enforced, for the shorter the limitation and the more effectually it is enforced, the greater is his freedom of access to his premises.

It strikes us that the parking meter is admirably designed to accomplish that result. We fail to see what difference it can make to either the traveler on the street or to the occupant of abutting property whether the time limitations be enforced by a policeman marking cars with a piece of chalk or by a mechanical device that registers "Time's up" in a way that all may see. The object of both is to prevent overtime parking, and, of the two, it seems to us that the latter is more effective. With the latter, there are no minutes of grace as there are with the policeman while he is making his rounds "marking" and "checking up," for the time begins to run when the car is parked, and ends when the meter registers "Time's up." That parking meters will diminish the vice of overtime parking and, consequently, speed up traffic, seems a certainty, for the car must be moved at the expiration of the time limited. "Repeating" by deposit of another coin is not permitted. We are convinced that ordinance No. C6860, providing for their installation and maintenance, is a valid exercise of the city's police power.

Similar ordinances have had the consideration of

the courts of a number of other states. There is a diversity of opinion as to their validity. They are sustained, we believe, by the weight of authority,—certainly by the weight of reason. *State ex rel. Harkow v. McCarthy,* 126 Fla. 433, 171 So. 314; *Ex parte Duncan,* 179 Okla. 355, 65 P. (2d) 1015; *In re Opinion of the Justices,* 297 Mass. 559, 8 N. E. (2d) 179; *Hendricks v. Minneapolis,* 207 Minn. 151, 290 N. W. 428; *Gilsey Buildings, Inc. v. Great Neck Plaza,* 170 Misc. 945, 11 N. Y. Supp. (2d) 694; *Clark v. New Castle,* 32 Pa. Dist. 371; *Owens v. Owens,* 193 S. C. 260, 8 S. E. (2d) 339; *Harper v. Wichita Falls,* 105 S. W. (2d) (Tex. Civ. App.) 743; *Ex parte Harrison,* 135 Tex. Crim. 611, 122 S. W. (2d) 314; *County Court of Webster County v. Roman,* 3 S. E. (2d) (W. Va.) 631.

The following decisions deny the power to regulate traffic by the installation and maintenance of parking meters: *Birmingham v. Hood-McPherson Realty Co.,* 233 Ala. 352, 172 So. 114, 108 A. L. R. 1140; *Shreveport v. Brister,* 194 La. 615, 194 So. 566; *Monsour v. Shreveport,* 194 La. 625, 194 So. 569; *In re Opinion to the House of Representatives,* 5 Atl. (2d) (R. I.) 455; *Rhodes, Inc. v. Raleigh,* 217 N. C. 627, 9 S. E. (2d) 389.

It is to be noted that the decisions in the Rhode Island and the Louisiana cases are predicated upon lack of charter or legislative authority in the bodies attempting to install the parking meter system. Implicit in these decisions is the inference that, granted such authority, the ordinances would be valid. In view of the broad scope of police power accorded to municipalities in this state, such cases are not apposite here.

The judgment is reversed, and the case is remanded with directions to sustain appellants' demurrer and enter judgment dismissing the action.

ALL CONCUR.