JOHN H. CASSIDY *v.* THE CITY OF WATERBURY.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued February 5—decided June 9—reargued July 13—Per Curiam filed July 20, 1943.

*Maurice T. Healey,* with whom was *Edward J. Mc-Donald,* for the appellant (defendant).

*Lawrence L. Lewis,* for the appellee (plaintiff).

ELLS, J. The city of Waterbury has installed and is operating more than one thousand parking meters on its business streets. Thirteen of them are in front of premises owned by the plaintiff. Operators desiring to park their vehicles must deposit coins ranging in value from one cent for fifteen minutes to five cents for one hour. The plaintiff brought an action for an injunction requiring the city to remove the meters in front of his premises, and for damages. The principal conclusion of the trial court was that the General Assembly has not given the city authority to purchase meters, install them in and upon the sidewalks and charge a fee to motorists for parking adjacent to the meters. Judgment was rendered commanding the defendant to remove the meters located on the sidewalks in front of the plaintiff's premises, and for $100 damages. The defendant has appealed.

The law governing the right to install and operate parking meters is one of general concern. We therefore state the foundation principles universally ap-

plicable, and then decide whether the defendant city had power or authority to install and operate parking meters, and whether the plaintiff is entitled to the relief granted him.

The power to regulate the use of streets and highways by restrictions on the parking of vehicles is one universally recognized, and its reasonable exercise is consistently upheld. The power is in the legislature. It may be delegated by it to its municipal subdivisions. The common way of enforcing parking regulations, restrictive as to time, is by the use of a police officer. He notes the time of arrival by his watch, and later checks the length of time the vehicle has remained in that particular place. If the period is beyond the time limit set by municipal regulation, he tickets the vehicle. Such supervision is generally by the chalk method. This has obvious limitations and faults. A new method has come into general use; the installation and operation of parking meters. A parking meter is a clock set on a post. It measures the time of parking. It provides mechanical assistance in the enforcement of the parking limitation. A municipality may provide parking meters to measure the time of parking as well as it may measure time by other means. There is no reasonable difference in principle between measuring time by the watch and chalk method and the mechanical meter method. Parking meters are not self-enforcing. Policemen are required to supervise and enforce the system. The power to exact a fee to cover the reasonable cost of the meters, to install, operate, repair and supervise them, is well settled. The regulative measure is not invalidated because incidentally the city's receipts of money are increased.

These general principles of law are sustained by the weight of authority and of reason. *Opinion of the*

*Justices,* 297 Mass. 559, 8 N.E. (2d) 179; *County Court* v. *Roman,* 121 W. Va. 381, 3 S.E. (2d) 631; *Kimmel* v. *Spokane,* 7 Wash. (2d) 372, 109 Pac. (2d) 1069; *Louisville* v. *Louisville Automobile Club,* 290 Ky. 241, 160 S.W. (2d) 663; *Columbus* v. *Ward,* 65 Ohio App. 522, 31 N.E. (2d) 142; *Phoenix* v. *Moore,* 57 Ariz. 350, 113 Pac. (2d) 935; *Owens* v. *Owens,* 193 S.C. 260, 8 S.E. (2d) 339; *State ex rel. Harkow* v. *McCarthy,* 126 Fla. 433, 171 So. 314; *Clark* v. *New Castle,* 32 Pa. D. & C. 371; *Gilsey Buildings, Inc.* v. *Incorporated Village of Great Neck Plaza,* 170 Misc. 945, 11 N.Y.S. (2d) 694; *Harper* v. *Wichita Falls,* (Tex. Civ. App.) 105 S.W. (2d) 743; *Ex parte Harrison,* 135 Tex. Crim. Rep. 611, 122 S.W. (2d) 314. We have found only two cases which deny the power to regulate traffic by the installation and maintenance of parking meters: *Birmingham* v. *Hood-McPherson Realty Co.,* 233 Ala. 352, 172 So. 114, 108 A.L.R. 1140; *Rhodes, Inc.* v. *Raleigh,* 217 N.C. 627, 9 S.E. (2d) 389, 130 A.L.R. 311. The cases of *Shreveport* v. *Brister,* 194 La. 615, 194 So. 566, *Monsour* v. *Shreveport,* 194 La. 625, 194 So. 569, and *In re Opinion to the House of Representatives,* 62 R.I. 347, 5 Atl. (2d) 455, are predicated upon lack of charter or legislative authority in the bodies attempting to install the parking meter system. The Alabama case, supra, is easily distinguishable on its facts.

A vital question is whether the revenue received by the city through the use of the meters has some reasonable relation to the expense of installation, operation, maintenance and supervision of the meter system, or whether the revenue is so clearly in excess of the cost that it must be construed as an unauthorized taxing measure. A short statement of the rule is that "The ordinance must stand if a regulation and fall if a tax." *Hendricks* v. *Minneapolis,* 207 Minn. 151, 154,

290 N.W. 428. A more comprehensive rule is stated in *Opinion of the Justices,* supra, 565: "Requirement of payments from those parking automobiles to meet the cost of the installation, operation and maintenance of the [meter] system and its general supervision would be permissible." *Gilsey Buildings, Inc.* v. *Incorporated Village of Great Neck Plaza,* supra, is to the same effect.

In the present case the court concluded that the primary reason for the installation of the meters was to regulate traffic but that the city did derive a profit from their use after all proper charges were credited against the revenue. The court did not conclude that the profit was so large as to make the meter system a revenue or taxing measure, and therefore invalid. One paragraph of the finding states that the income during the calendar year 1941 exceeded the expense, another that the city derived a "large profit," and a third that the income for a year and a half was $35,849.22, $26,514.40 was paid "on account of the cost of the meters," and $8350 for police supervision and other expenses, but that the life of the meters was five years and that in accordance with proper accounting measures only 20 per cent of $26,514.40, or $5302.88, should be allowed. The defendant attacked these findings, and insists that there was a considerable net loss and not a large net profit.

We have carefully analyzed the evidence, and find that the net profit, if any, was not large enough to constitute the meter charge a tax instead of a charge for the reasonable expenses connected with the regulation and restriction of traffic. The court has found that the primary reason for the installation of meters was the regulation of traffic. Furthermore, the measure, being regulatory, is not invalidated because incidentally the city's receipts of money are increased.

*County Court* v. *Roman,* supra; *Buffalo* v. *Stevenson,* 207 N.Y. 258, 263, 100 N.E. 798. In the recent case of *Kimmel* v. *Spokane,* supra, it was held that since the declared purpose of the ordinance is regulatory the court will not go behind the legislative declaration in the absence of evidence tending to show that the declaration is sham and the ordinance is, in reality, a revenue measure. There is no such evidence in the instant case. In *Ex parte Duncan,* 179 Okla. 355, 65 Pac. (2d) 1015, it was held that the courts will not seek to avoid an ordinance by nice calculation of the expense of enforcing police regulations; and that if the city was making inordinate and unjustified profits by means of the parking meters, and was resorting to their use not for regulatory purposes but for revenue alone, the result would be different. In *Hendricks* v. *Minneapolis,* supra, it was stated (p. 155): "It would not be enough to show that the fee will exceed the cost for one period, or by a small amount. It must be made plain that the scheme of the ordinance is such that receipts will continuously and by a substantial amount exceed the cost of installation, maintenance, and regulation." In this connection we may justifiably take notice that the amount of parking fluctuates, as illustrated by present-day restrictions, and that there was some profit over the period before us does not mean that at other times there might not be considerable loss. In *Owens* v. *Owens,* supra, the court said (p. 266): "There is nothing in the record to establish clearly the fact that the purpose of the city is to raise revenue under the guise of a police regulation." Likewise there is nothing in the instant case. See also *Hannon* v. *Waterbury,* 106 Conn. 13, 18, 136 Atl. 876. In view of these authorities we find it unnecessary to state our analysis of the receipts and

expenses as shown by the evidence. The regulation is in reality a regulatory and not a tax measure.

It is implied in all of the decisions we have cited in support of the first general principle, and it is expressly held in most of them, that the installation and operation of such parking meters and the exaction of a fee of the kind we have described are not an unlawful violation of the abutting owners' property rights. See also *Canastota Knife Co.* v. *Newington Tramway Co.,* 69 Conn. 146, 151, 36 Atl. 1107; *State* v. *Muolo,* 119 Conn. 323, 176 Atl. 401. In the latter case we said (p. 327): "The owner of the fee holds his estate subject to the right of the public to the full enjoyment of the easement, under the changing conditions of life, and subject to such control as the Legislature may exercise under its police power." The power to regulate the use of the streets is a delegation of the police power of the state government, and whatever reasonably tends to make regulation effective is a proper exercise of that power. *Buffalo* v. *Stevenson,* supra, 263.

The next question is whether the defendant city had power or authority to install parking meters. It claims that the board of police commissioners was authorized to install the meter system. This is based on §§ 393 and 401 of the General Statutes and § 77c of the Cumulative Supplement of 1935, which provide, in so far as they apply to the instant case, that the traffic authority of any city, town or borough shall have the power to prohibit, limit or regulate the parking of vehicles, that the traffic authority shall be the board of police commissioners and that such authority shall have power to make rules and regulations necessary to make effective the provisions "of this chapter." The plaintiff's claim is that the power to prohibit, limit or regulate the parking of vehicles does not in-

clude the authority to install parking meters and to charge such a fee as we have discussed. "There can be no serious denial that parking meters are a means of regulating parking. . . . The power to regulate 'justifies the charge of a fee and the imposition of a penalty; and the regulative measure is not invalidated because, incidentally, the city's receipts of money are increased.' " *County Court* v. *Roman,* supra, 383. In a case in which the facts are quite similar to· those of the instant one, it was held that, since there can be no doubt of the right to regulate parking, the city should have a wide latitude in selecting the means to be adopted, may provide meters to ·measure the time of parking as well as it may measure such time by other means, and may charge such a fee as is reasonably necessary to defray the expense connected with their operation. *Owens* v. *Owens,* supra. To the same effect are *Ex parte Harrison* and *Ex parte Duncan,* supra. We decide that under the statutes we have cited the board of police commissioners, as the traffic authority, had power to install the meter system.

The plaintiff claims that the making of the contract for the leasing of the meters was not in· compliance with various provisions of the charter ·of the city; thus he says that it was executed·in behalf of the city by the mayor at the request of· the board of police commissioners but that he had no authority to bind the city in this way, that there was no order for "the purchase" of the meters by the director of purchases, that no appropriation for the expense entailed had been made when the contract was executed and that the contract required an expenditure of more than $1000 and therefore competitive bids were necessary. 21 Spec. Laws 590, 591, §§ 76, 83, 85; 23 Spec. Laws 651, 653, §§ 22, 30. In his complaint the plaintiff alleged

that he was a taxpayer in the city as well as a property owner, and in his prayers for relief he asked, in addition to an injunction requiring the defendant to remove the meters in the streets adjacent to his property, one restraining the defendant from installing or maintaining other meters on the streets in front of his property "and in other streets and sidewalks in the city." But the gravamen of the complaint was that he had been injured in his rights as a property owner, and the court in its judgment granted him relief in that capacity. It may be that, while the board of police commissioners had authority to install a system of parking meters in the city, it could not impose on the city any financial obligation except in accordance with the charter provisions. The police commissioners had authority to install the meters, and if in procuring them the provisions of the city charter were not complied with, this does not entitle the plaintiff as the owner of the property in front of which some of them were installed to compel their removal. See *New York, N. H. & H. R. Co.* v. *Wheeler,* 72 Conn. 481, 491, 45 Atl. 14. Nor as a taxpayer is he entitled to the injunction sought. A taxpayer is not entitled to an injunction restraining such illegal conduct as the plaintiff claims unless he has suffered a pecuniary or other direct loss in that capacity. *Maxwell* v. *Smith,* 87 Wash. 629, 631, 152 Pac. 530; *Dudick* v. *Baumann,* 349 Ill. 46, 49, 181 N. E. 690; *Home Riverside Coal Mines Co.* v. *McAuliffe,* 126 Kan. 347, 267 Pac. 996; *Bell* v. *Platteville,* 71 Wis. 139, 147, 36 N. W. 381; 6 McQuillin, Municipal Corporations (2d Ed. Rev.), § 2751; and see *New York, N. H. & H. R. Co.* v. *Wheeler,* supra; *Crampton* v. *Zabriskie,* 101 U. S. 601, 609, 25 Law Ed. 1070. The complaint does not allege that the plaintiff has suffered any injury as a taxpayer; in fact one of his principal claims is that

the city will receive an income from the use of the meters greatly in excess of the cost of installing and maintaining them; and he has made the city the sole defendant. Neither his pleadings nor his proof furnished a basis for according him relief as a taxpayer.

There is error, the judgment is set aside and the trial court is directed to render judgment for the defendant.

In this opinion the other judges concurred.

PER CURIAM. The plaintiff made a motion to reargue for the sole purpose of having the court amend its rescript in this case to state that no costs will be taxed in favor of the defendant. The motion was granted. As this action was predominantly one in equity, we could have made such an order as regards costs in this court when the case was decided. General Statutes, § 2271. In neither the plaintiff's brief nor argument, however, was there any suggestion that he sought such an order in the event that the appeal should be decided against him. Without going so far as to decide that we could not in any event under such circumstances comply with a request of this nature, we hold that it is against the sound policy of this court to do so. It would be, in effect, an invitation to a party in equitable proceedings not to bring the matter of the taxation of costs before us when the case was presented, but to await a decision of the court and then, if he lost, seek to have the costs remitted. This would not be fair to this court and might result in delays in making public our decisions, because no opinion is printed as long as there is a motion to reargue pending and undecided.

The plaintiff makes the incidental claim that, as no correction was made in the finding, no costs should be

taxed against him for the printing of evidence on the defendant's appeal, citing *Southern New England Ice Co.* v. *West Hartford,* 114 Conn. 496, 513, 159 Atl. 470. In that case we refused to tax the cost of printing the evidence where no correction had been made in the finding, referring to the rule which is now § 351 of the Practice Book. This provides that such expense as has been paid by the prevailing party for the printing of evidence shall be taxed in his favor unless the court shall find that the printing of it was "unjustifiable." The basis of the ruling in the *Southern New England Ice Co.* case was that in the situation then before us the printing of the evidence was "unjustifiable." Where a party in good faith and upon reasonable ground seeks material corrections in the finding, the printing of the evidence in support of his assignments of error cannot be regarded as unjustifiable.

We make no change in the rescript as to costs. There is no occasion to pass upon the motion to strike out the motion to reargue.